## Holbrook, et al. v. Fyffe, By, et al.

(Decided April 30, 1915.)

### Appeal from Lawrence Circuit Court.

1. Trusts—Parol Trust.—A trust on personal property may be created by parol and proved by parol evidence.

2. Trusts—Parol Trusts.—A court of equity may enforce a parol trust, change the trustee, and direct the funds to be paid into the hands of a receiver, at the suit of the cestui que trust.

3. Trusts—Trustees.—A court of equity should not change the trustee, nor cause the funds paid to a receiver, unless there is some sufficient equitable reason for so doing.

4. Trusts—Accounting.—One who receives trust property, knowing that it is impressed with a trust, may be required to account for it.

5. Banks and Banking—Attachment.—A fund, which has been gar-
nisheed in the hands of a bank, and the bank negligently pays
it out, before the discharge of the attachment, and before any
order of court has been made directing it, to whom to pay the
money, if made to account for it to the person who sued out the
attachment, can not complain.

W. D. O'NEAL, JR., for appellants.

M. S. BURNS for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This suit was brought in the Lawrence Circuit Court
by Nancy Fyffe, through her next friend, Pleasant
Skaggs, against her son-in-law, J. H. Holbrook, and the
husband of her granddaughter, N. W. Fraley, and the
Louisa National Bank. Nancy Fyffe is a woman near
seventy years of age, and whose husband, Merideth
Fyffe, about seventeen or eighteen years ago, having be-
come enamored of other women, caused his wife, Nancy
Fyffe, to be adjudged a lunatic, and sent to the Eastern
Asylum for the Insane, and thereafter lived with an-
other woman. Nancy remained in the asylum for the
insane for about one year, when her son-in-law, J. H.
Holbrook, procured her release as a harmless lunatic,
and brought her back to the neighborhood of her old
home, which was on the head waters of Blaine Creek, in
Lawrence County. Her husband refused to permit her
to live with him, or to render her any aid or assistance
in any way, and taking the strange woman with whom
he lived, he went into another county, and has since re-
sided there with the woman. To these circumstances and
her husband's treatment of her, by habits of drinking
and association with lewd women, and by desertion of
her, before she was adjudged a lunatic, is attributed her
loss of rationality. Thirteen or fourteen years ago she
returned to the asylum for the insane again, but it does
not appear how long she was confined in the asylum at
that time. Her husband owned a farm on Blaine Creek,
where his son, Milliard Fyffe, lived, and sometimes
Nancy Fyffe resided with him, and at other times with
the appellant, Holbrook, and at other times with a son-
in-law, whose name was Ferguson, and, also, with Pleas-
ant Skaggs, another son-in-law, who is her next friend in
this suit, and at other times among other relatives and
friends, without any particular place of abode.

Several years ago her husband, for the purpose of enabling his daughter, Ida Holbrook, wife of appellant, to become a surety upon his bond in some kind of a transaction relating to the sale or making of whiskey, for the alleged consideration of one dollar, conveyed the farm to Ida Holbrook. She, however, does not seem to have ever set up any claim to the farm, or to have made use of it in any way, by reason of the conveyance to her, and it really does not appear that she knew at the time of the conveyance, that it had been made. Several years ago the appellant, Holbrook, removed with his family from that neighborhood to Greenup County, where he has since resided. Nancy Fyffe did not join in the conveyance to her daughter, Ida Holbrook, and it does not appear that she had any knowledge of such conveyance, and retained her potential right of dower in the land, probably lived upon it from time to time as her vagaries of mind might lead her to do. She, also, lived with her daughter, the wife of Pleasant Skaggs, two or three years at one time, and her son, Milliard Fyffe, paid her board.

In the year 1913, her husband came to the neighborhood, and there is some proof of some conversation he had with her, in which he was advising her to sell her interest in the farm. Milliard Fyffe and the appellant, Holbrook, and probably other members of the family, arranged among themselves to sell the land to one Noah Skaggs for $2,000.00. It being necessary to secure Nancy Fyffe's signature to and acknowledgment of the deed to effect the sale, Holbrook made a promise to her, that if she would do so, that he would take care of her and treat her in a humane manner as long as she lived, and give her a decent burial at her death. While the exact facts in regard to the transaction are not shown by the record, it seems that it was arranged by her son, and probably her husband and Holbrook, that Holbrook was to receive $600.00 of the price to be received for the land, and which he was to receive and use in providing for Nancy Fyffe as long as she lived. The sale was effected to Noah Skaggs, and he paid over to Holbrook $600.00 in money, and gave notes to the amount of $700.00, which are held by Milliard Fyffe, but who received the other $700.00 of the purchase price of the land, does not appear. Holbrook insists that the $600.00 was not all to be applied in providing for the appellee, Fyffe, but that some portion of it represented his inter-

est in the land. It is, however, very apparent, that he nor his wife had any real interest in the land, but on account of the conveyance by her father to his wife of the land, it was necessary for them to join in the deed to effect the sale.

Nancy Fyffe was taken to Louisa by Holbrook, and there executed the deed, but no money was paid or offered to her. Holbrook insists that he made a contract with the old woman to take care of and provide for her at his home in Greenup County, while it is contended upon her part, that it was not agreed that he should only provide her a home at his house. Holbrook took her, immediately after the execution of the deed, with him to his house, in Greenup County, and she remained there about two months. She became very much dissatisfied with residing at his home, and talked continuously of her desire to return to the neighborhood of her old home on Blaine Creek. Her conversation upon that subject was her continual theme, both to members of Holbrook's family, and to him, and to such other persons as she came in contact with. She became so dissatisfied with her surroundings, that she went to the extremity of butting her head against the walls, and beating herself in the face with her fists. Holbrook, as he says, at her request, came to Blaine Creek to make arrangements to find her a home, and with some one with whom she would be satisfied to live, and that he offered her son-in-law, Pleasant Skaggs, and his wife $300.00 to take care of her during her lifetime, but they would not agree to do so, unless he would pay them the $600.00, which he had received for that purpose. He then entered into an arrangement with N. W. Fraley, who had recently married a granddaughter of appellee, to provide her a home and care for her during her lifetime, and consummated this arrangement by paying to Fraley $300.00 of the $600.00 which he had received from the purchase price of the farm. He then returned home and informed Mrs. Fyffe of the arrangement that he had made, and the proof shows that she was very much pleased with it. When he brought her to Louisa, Fraley met them with a team to convey her to his house. She went very willingly with him, but when they had come to the home of her sister on Blaine Creek, she expressed the desire of spending two nights with her sister, which Fraley permitted her to do, promising to return for her at the expiration of that time. He did return, accompanied by

his wife, when she refused positively to go with him, and went to the house of her daughter, the wife of Pleasant Skaggs, where she has resided since that time.

The contention of appellee is, that Fraley did not have any house to which to take her at the time, and did not own any home, but, it seems that he made an arrangement with his father, by which he procured a dwelling house on his father's land, into which he very soon thereafter moved. Fraley deposited the $300.00, which he received from Holbrook, in the Louisa National Bank, and thereafter checked out $30.00 of it. The record shows conclusively that the appellee, from disease, old age, or grief, has been reduced to that state of mental imbecility which disqualifies her for the prudential management of her affairs, and that she is entirely incompetent to transact any business, or to deal with any one at arm's length, and is clearly mentally unbalanced. The proof, further, shows that Holbrook and his family treated her well while at his house, and exerted themselves to induce her to remain there, and, also, shows that her daughter, Mrs. Skaggs, and her husband, did not influence her to come to their house to live, or to refuse to live with Fraley, but that they advised her to go and live with Fraley.

When the suit was filed, in which the plaintiff alleged the setting apart of the $600.00 for her benefit, it was also alleged, that Holbrook, without her consent and against her will, made the arrangement with Fraley and paid to him the $300.00 of the money, and without her consent took her and delivered her into the custody of Fraley at Louisa, and that the arrangement with Fraley was a fraud upon the rights of appellee, and asked a judgment against Fraley, and, also, against Holbrook, for $600.00; also alleged that the $300.00 paid to Fraley was deposited in the appellant bank, and procured an order of attachment, which was executed upon this fund in the bank. The appellant bank first answered, that it had on deposit $300.00 to the credit of Fraley. Thereafter, it offered to file an amended answer, and petition to be made a party, in which it alleged that some employe of the bank, who had no knowledge of the attachment having been served, had paid the $270.00 out upon checks given by Fraley, and that Fraley was insolvent, and that he was a housekeeper with a family, and the money was exempt from attachment. The court, however, refused to allow this paper to be filed. Fraley filed

a separate answer, in which he denied any contract with the appellee, but set out his contract with Holbrook, and averred his willingness to perform it, and the refusal of the plaintiff to allow him to do so. Holbrook plead his readiness to perform his obligation to provide a home for the appellee at his house, and that he had requested her frequently to come and live at his house, but that she refused to do so. While the suit was pending the court entered an order permitting Holbrook to secure a home for the appellee, and to provide her with a living, and gave him thirty days within which to do so. It seems that he then made an effort to get her to return to his house, but she refused, declaring that she preferred death to doing so.

The case being submitted upon the pleadings and evidence, the court sustained the attachment on the $270.00, deposited in the appellant bank by Fraley, and directed the bank to pay it to the receiver of the court, and rendered a judgment against Holbrook for $600.00, but adjudged, that when the $270.00 should be paid, that it should be credited on the $600.00 adjudged against Holbrook. The receiver was directed to collect the remainder of the $600.00, and to pay it out to the person keeping and caring for appellee, at the rate of ten dollars per month, until the further order of the court, and directing the cause to be continued and kept on the docket of the court, to enable the court to properly care for the unfortunate woman. To this judgment, Holbrook, Fraley, and the Louisa National Bank excepted, and prayed an appeal to this court.

The appellant, Fraley, in no place pleads that the $270.00 was property to which he was entitled to hold as exempt as a person with a family under the laws, and if he had have done so, it could have availed him nothing, as will be hereinafter set out. Such a plea if made by Fraley himself could not avail him anything and could not be made by any one else for his benefit. For that reason the court was not in error to the prejudice of the Louisa National Bank in refusing to permit the filing of its amended answer and petition to be made a party. The record shows that it had been duly served as a garnishee, and by the order of attachment issued in the case, and thereafter by the negligence or fault of some employee, or by some officer of the bank, honored the checks of Fraley drawn upon it, and paid out this money, when Fraley, no doubt, by drawing checks upon

the fund after he had been sued, and after the order of attachment had been issued, was doubtless attempting to perpetrate a fraud upon the appellee. The attachment created a lien upon the $270.00, and the bank had no right to pay it out thereafter, until the order of attachment should be discharged, or until an order of court was entered giving it directions as to whom it should pay the money, and it cannot now complain of its own negligence in allowing Fraley to get the money away from it, to the prejudice of the rights of the appellee.

While the appellant, Holbrook, claims in his testimony that he had a contract with the appellee, by which, if she would sign and acknowledge the deed to the farm, that he would receive $600.00 of the purchase price of the farm, and in consideration of her signing the deed, he would maintain her at his house as long as she lived, this statement is not very impressive in the light of the fact that the interest which the appellee was conveying away in the farm was her property, and her only means of support, in her helpless condition, and that through the arrangements effected by the parties to the transaction at that time, the money was not paid to or received by the appellee, but went to Holbrook. All of the facts and circumstances in the evidence conclusively show that an arrangement was made by the parties interested in the farm and its sale, and the members of the family, that this $600.00 was a fund set apart by all of them, and put into the hands of Holbrook for the support and maintenance of appellee. It is very apparent that all of those engaged in the transaction recognized the hopeless mental imbecility of the appellee, or else she would have been entrusted with her own funds, instead of the funds being placed in the hands of Holbrook. It appears to have been an express parol trust, and that Holbrook was made the trustee to receive and hold the funds, and use them for the support and maintenance of appellee. Doubtless, to induce her to sign the deed, he held out to her the prospect of a home at his house for the remainder of her life. Holbrook's claim to having an interest in the land himself is perfectly idle. It is, also, futile to insist upon the enforcement of contracts alleged to have been entered into with one like the appellee, who was totally incapable, from the evidence, to have made a contract, and, neither should she be bound thereby. Trusts on personal property may be created by parol

and proved by parol. Perry v. Riding, 9 R., 536; Berry v. Norris, 1 Duvall, 303; Barkley v. Lane, 6 Bush, 588.

Under circumstances such as those related above, although appellant, Holbrook, and his family might have in good faith, undertaken to treat the appellee well in their home, yet if he was unable to make her satisfied to remain there at his home, and could not procure her to do so on account of her vagaries arising from her unsoundness of mind, it would be inequitable to permit him to keep the $600.00, which arose from a sale of the appellee's potential right of dower in the farm on Blaine Creek. To do so would deprive the appellee of her property, and all of the means which might be used in caring for and making her comfortable. If, on account of her imbecility or insanity, she is happy to live in the house of her daughter on Blaine Creek, and is not satisfied to live with appellant, Holbrook, or with Fraley, and to compel her to do so would destroy what little happiness there may be in store for her, although her conduct in refusing to live at these places should be irrational, the chancellor seeking to do that which is best for her, would not compel her to reside at either the house of Holbrook or that of Fraley. It does not appear, neither does Holbrook contend that he had any contract with any rational person of the family, that in consideration of the $600.00, that he would only provide for her at his own house.

It is a well settled principle of law, that courts of equity have jurisdiction of all questions relative to the establishment, protection, enforcement, and preservation of trusts, on either real or personal property, and this they may do upon the application of the person or persons interested. 39 Cyc., 588.

A court of equity has jurisdiction in the suit of a *cestui que trust* to enforce the trust, or change the trustee, and compel any person who has gotten possession of the trust fund knowingly, to surrender it. Bixley v. Taylor, 3 B. M., 362.

Wherever, through the trustee's acts, or misconduct, waste, or other serious loss is likely to arise, the court may order the trust funds placed in the hands of a receiver. The appointment of a receiver, however, is a matter within the sound discretion of the court, and before exercising it the court will take in consideration all of the circumstances of the case.

It seems that in this case Holbrook had paid $300.00—one-half of the fund—to a financially irresponsible party, without requiring any security for the performance of what he obligated himself to do, and we are not able to say that the court in anywise abused its discretion by removing the trustee and requiring the funds turned over to the receiver of the court, and authorizing him to collect them.

It is insisted for the appellant, Fraley, that he had no contract with the appellee, and did not receive anything from her, and for that reason she was not entitled to any judgment against him, nor to recover the funds which he had on deposit with the Louisa National Bank, and the bank, by its amended answer and petition, which it offered to file, makes the same insistence. The proof in the case, however, shows that Fraley was present at the conversation between Holbrook and Pleasant Skaggs and his wife, in which the fact that Holbrook had the $600.00 arising from the sale of the land to be expended for the benefit of appellee, and heard the offer which Holbrook made to Skaggs and wife to pay the $300.00 of the money to them to care for the appellee as long as she lived, and their refusal to do so, when Holbrook had received $600.00 for that purpose, but offered to do so, if he would pay them the $600.00. Fraley then proposed to Holbrook to accept the proposition which Holbrook had made to Skaggs and wife. He then received the $300.00 with full knowledge of the fact that it was part of a fund held in trust by Holbrook for the benefit of the appellee. One who receives title from a trustee with notice of the trust, holds the title subject to the trust. Cox v. Osbourn, 1 Mar., 311; Rodgers v. Reid, 14 R., 811. Fraley received this money impressed with the trust, and with knowledge that there was a trust upon it for the benefit of appellee, and the court did not err in requiring that portion of the fund to be paid by the bank to the receiver, because the proof shows that Fraley had done nothing by which he was entitled to any portion of it. No personal judgment was rendered against Fraley, but he should have been required to pay the $30.00, which he had expended of this fund, to the receiver, but no cross-appeal has been taken by the appellee.

Under the circumstances existing, in the case at bar, the judgment of the court below seems to have done substantial justice between the parties, and it is therefore affirmed. Judge Hannah not sitting.