### Fidelity & Columbia Trust Company v. Grommes and Ullrich.

### Paxton, Receiver, and Feland v. Hoffman Distilling Company, Grommes and Ullrich, et al.

(Decided December 19, 1919.)

## Appeals from Anderson Circuit Court.

**1.** Appeal and Error—Reference to Commissioner.—Where, upon an appeal, a decision of the questions involved are both questions of law and questions of fact, and the application of the decisions of the questions of law to the facts, and the decisions upon the questions of fact, will involve much time and the searching out of sums, and the addition, subtraction and multiplication of sev-

eral hundred pages of figures; and in other words convert this court into a commissioner, when such duties should have been performed by a commissioner in the trial court, the cause will be remanded to the trial court, for further proceedings and adjudication.

2.  Receivers—Allowance for Attorney's Fees.—In regard to the employment of counsel by a receiver, the best course, is for the receiver to first secure the authority of the court for so doing, but, in the absence of such authority if it is necessary for him to have the legal services of an attorney, he may employ one, and will be entitled to have an allowance made out of the assets of the trust, to compensate the attorney.

3.  Receivers—Allowance for Attorney's Fees.—Where authority is not first obtained by a receiver to employ counsel, the court is not bound by any contract, the receiver may make with counsel, nor any agreement as to compensation, as it is within the province of the court, at all times, to determine the necessity for the employment and the amount of compensation, but, if the receiver has not abused a sound discretion in the employment of counsel, the court will allow a reasonable compensation for the necessary, legal services, rendered by the attorney.

BENJAMIN H. SACHS and M. A., D. A. and J. G. SACHS for Fidelity Trust Company.

KEITH L. BULLITT and BRUCE & BULLITT for Grommes & Ullrich.

J. R. FELAND for J. R. Paxton, Receiver, et al.

OPINION OF THE COURT BY JUDGE HURT—Reversing upon the appeal of Paxton and Feland; and remanding appeal of Fidelity & Columbia Trust Company against Grommes & Ullrich to the trial court for further original adjudication.

The above two appeals have been heard and determined together.

The appeal of the Fidelity & Columbia Trust Company against Grommes & Ullrich, will be first consirered. Hoffman Distilling Company, was a corporation engaged in the general business of a distiller.  It owned and operated a plant for distilling whiskey, and warehouse purposes, which consisted of several acres of land, upon which were situated a distillery, the warehouse, and the things usually appurtenant to the conduct of the business of a distiller.  On June 21, 1904, it executed and delivered five bonds for the aggregate sum of $7,500.00 to the Fidelity & Columbia Trust Company, as a trustee for whoever might, thereafter, become the owner of the

bonds; and, to secure the payment of the principal and interest, which might accrue on the bonds, it, on the same day, executed a deed of trust or mortgage to the trustee, which embraced the grounds upon which the distillery was situated, and, by its terms, was made to cover not only the grounds and distillery, proper, with its appurtenances designed for use in connection with the making and handling of whiskey, but, also, the "rents and profits" of the plant. Provisions were in the deed of mortgage, which authorized the trustee, in certain contingencies, to take possession of the plant, or apply for the appointment of a receiver for it, and to collect and receive the "tolls, incomes, issues, profits and earnings" of it, for the purposes of the trust and other provisions not necessary to be adverted to. This deed was lodged for record in the office of the clerk of the county court, on June 25, 1904, and recorded on July 2, 1904. On the 9th day of February, 1912, the appellant, Fidelity & Columbia Trust Company, being the holder of the bonds, instituted this action against the distilling company, for a judgment upon the bonds, and the enforcement of the provisions of the trust deed, and the lien, which it had upon the property, embraced in the deed, and asked for the appointment of a receiver for the property and business. A receiver was appointed on the 12th day of March, 1912, and took possession of the property, and entered upon his duties. A great many other parties, who had subsequent liens upon the property, or had interests therein, were made parties to the action, among them, the appellees, Grommes & Ullrich. The latter were parties to a contract with the distilling company, by which they became the purchasers of the entire whiskey output of the distillery. Upon the entry of the whiskey into bond warehouse receipts were delivered to Grommes & Ullrich by the distilling company for the whiskey. Each receipt was made to represent the ownership of five barrels of whiskey, and Grommes & Ullrich received receipts for all the whiskey, which was made and placed in the warehouses, from the making of the contract between them and the distilling company on the 25th day of July, 1903, until the autumn of the year, 1911, when the distillery ceased to operate, and they also, seem to have been the owners of whiskey in the warehouses at the time this contract was entered into. The "storage" or the sum to be paid by Grommes & Ullrich to the distilling

company for keeping the whiskey in the warehouses was five cents per barrel, per month. The contract between Grommes & Ullrich and the distilling company, which was executed on the 25th day of July, 1903, was put in writing, and provided, that the "storage" to be paid by Grommes & Ullrich for the whiskey, then owned by them in the warehouses, or that was thereafter to be made and put into the warehouses, under the contract, was to be five cents per barrel, per month, but, that they should have the "storage" free on all whiskey, entered thereon for one year, from the date of its entry. It was further provided, that the distilling company should guarantee, that the loss of whiskey by shrinkage and evaporation "upon each and every barrel so manufactured and entered into bond," should not exceed by more than one gallon, the allowance for shrinkage and evaporation by the act of congress, of March 3, 1899. An amendment of this contract was made and entered into, on the 24th day of May, 1904, and on July 24, 1904, it was further amended, to the effect, that on all whiskey thereafter made under the contract, Grommes & Ullrich should be entitled to two years' "free storage." The warehouse receipts, which were prepared under the directions of Grommes & Ullrich for the whiskey, contained a provision to the effect, that, "if this receipt is returned to us for regauge and ascertainment of loss before the expiration of seven years from the date of original entry into bond as required in act of congress of March 3, 1899, and the payment of all charges due at that time, we guarantee the loss, by shrinkage and evaporation up to that time on each barred covered by this warehouse receipt, shall not exceed one gallon over and above the allowance for shrinkage provided for in said act," and further, "No allowance for loss, occurring after the goods have been seven years in warehouse, will be made."

Grommes & Ullrich contended, that they were not entitled to pay any "storage" for two years after the entry into bond of the whiskey, and that they were entitled to have the "outage" as a whole, due them, set off against the "storage" as a whole, due to the distilling company, and were entitled to have the "outage" allowed them, when the whiskey was taken out of bond regardless of whether they had returned the receipts and paid all charges up to the time, within seven years from the date of entry of the whiskey into bond, or not, and were en-

titled to the allowance for "outage" after seven years upon return of the receipts. The appellants contended, that, under its mortgage, it was entitled to receive the "storage" at five cents per barrel, per month, to be applied upon its debt and the purpose of the trust; that Grommes & Ullrich were not entitled to any "free storage" upon the whiskey, or at least, not more than one year, and were only entitled to an allowance for "outage" by the distilling company when the warehouse receipts were returned within seven years from the date of the entry of the whiskey, covered by them, into bond, and upon the payment of all "storage" thereon up to that time, and were not entitled to any "outage" under any state of case, more than was sufficient to offset the "storage" upon the particular barrel out of which the "outage" arose.

It appears from the evidence, that Grommes & Ullrich stamped, upon the warehouse receipts, when they would sell whiskey to their customers, or when they presented them themselves, a declaration to the effect, that all "storage" had been paid up to two years from the date of the entry into bond of the whiskey embraced by the receipt.

At the time of the rendition of the judgment, appealed from, the receiver had in his hands, $16,978.28, which he had collected from Grommes & Ullrich as "storage," but, which, they claimed had been wrongfully collected from them upon the whiskey and which they were entitled to have returned to them, because it should not have been collected at all, and that the "outage" to which they and their customers were entitled, should have been set off against the claim for "storage" by the receiver. The court upheld their contention, and adjudged that the sum of it remaining after the payment of certain costs, should be returned to them, and, from this judgment, the Fidelity & Columbia Trust Company has appealed.

The judgment of the court does not show whether the court ever determined the question as to whether or not, Grommes & Ullrich were entitled to one year's "free storage," upon whiskey in the warehouses, or made under the contract of July 25, 1903, nor whether they were entitled to two years' "free storage" upon whiskey made and put into the warehouses, under the last amendment to that contract; nor whether they were entitled to be allowed the "outage" in excess of one gallon over the

amount allowed under the act of 1899, when the receipts were not returned within seven years from the dates of the entry of the whiskey into bond and charges paid up to that time, nor whether they were entitled to be allowed the "excess outage" after the whiskey had been in bond for seven years, and in other words, the judgment does not show of what the "outage" consists, which it was adjudged that Grommes & Ullrich were entitled to offset against the "storage" collected, nor whether in the collection of the "storage" in the hands of the receiver, "free storage" for one year or two years was allowed Grommes & Ullrich. The action was never referred to a commissioner, to find and report the facts, upon which a judgment must rest, and the only evidence in the record, from which such facts might be gathered, is a report of the receiver, which consists of several hundred pages of figures, without any summing up of totals, and we, with our duties, have not the time, to search through this record and make the additions, subtractions and multiplications, necessary to arrive at the facts, upon which to determine the soundness of the chancellor's conclusions, if we should be able to do so, at all. The report shows, that in certain instances, the receiver offsets "outage" against "storage," and shows an excess of "outage" over "storage," but, we can not ascertain the rule upon which he based his action, or to what particular class of barrels of whiskey, he applied the rule of offsetting "outage" against "storage," and to what barrels he did not apply the rule upon which he acted.

The report does not show when any of the whiskey was entered into bond, in the warehouses, and, hence, whether the "outage" allowed to be set off by the judgment against "storage," was ascertained within seven years from the entry into bond of the whiskey, or thereafter. Hence, we have determined to remand the action to the trial court, with directions, through a commissioner or otherwise, to ascertain and determine:

(1) Whether in the collection of "storage" the receiver omitted to collect the "storage" for one year, upon all whiskey, which Grommes & Ullrich and their customers had in the warehouses on July 25, 1903, and all manufactured thereafter, and which was withdrawn after the appointment of the receiver, and to what sum such "storage" amounted to.

(2)   To ascertain whether in the collection of "storage" the receiver did or did not allow Grommes & Ullrich two years' "free storage" upon the whiskey made and put into the warehouses after July 25, 1904, which was withdrawn after the receiver's appointment; and to what sum such "storage" amounted.

(3)   The value of the "outage" in excess of one gallon over the amount allowed by the act of 1899, upon the whiskey of Grommes & Ulrich and their customers, where the receipts were returned for regauge and ascertainment of the "outage," within seven years from the date of the entry into bond, and the total sum of the "storage" upon such whiskey.

(4)   The sum of the "storage" upon whiskey of Grommes & Ullrich and their customers, where the warehouse receipts were not returned for regauge and ascertainment of "outage," within seven years from the date of entry into bond; and the value of the "outage" upon such whiskey, in excess of one gallon over the amount allowed by the act of 1899.

(5)   The value of the "outage," in excess of one gallon over the amount allowed by the act of 1899, upon the whiskeys of Grommes & Ullrich and their customers, where the receipts were not returned within seven years from the date of entry into bond, but, where the receiver, at the end of seven years from its entry into bond, caused an ascertainment to be made by a regauge.

The total amount of "storage" which the receiver did not collect, if any, but permitted to be set off by "outage."

The court should determine the above stated questions of fact and whether or not, Grommes & Ullrich were entitled to any "free storage," and whether or not they were entitled to recover for "outage" in excess of one gallon over the amount allowed by the act of 1899, where the warehouse receipts were not returned for regauge and ascertainment of loss within seven years after the date of the entry into bond of the whiskey, and then determine the cause according to what he deems the rights of the parties.

The appeal of J. R. Paxton, receiver, and F. R. Feland, his attorney, is from a judgment of the court overruling the motion of the receiver and his attorney, for an allowance to be made out of the assets of the trust

estate, in the hands of the receiver for the payment for legal services rendered the receiver by his attorney, in the conduct of his duties as receiver. No application was ever made to the court by the receiver, for authority to employ counsel, nor was any such order of the court ever made. While the receiver is an officer of the court, and is entitled, at all times, to apply to the court for advice and instruction, the better rule is, that a receiver, before employing counsel, should seek and receive authority of the court, but, in the absence of such authority, it is held, that a receiver may employ counsel for himself, and counsel fees are considered as just allowances, which may be made by the court. It is, however, uniformly held, that a receiver can not make any contract for employment of counsel, nor any agreement as to the amount of compensation for the attorney, which will be binding upon the court, as it is the duty and province of the court to determine in every instance, whether the employment has been necessary, and if necessary, the sum to be allowed for the compensation of the attorney. If, in exercise of good discretion, there was no necessity for the employment of counsel, the court may refuse any allowance therefor, and may determine from the evidence, and its own knowledge of the questions, the necessity for counsel and the amount of compensation due. 23 R. C. L. 138, 139; 34 Cyc. 2904-464. The necessary counsel fees, when allowed, are a part of the costs of the receivership and are entitled to priority in payment. 34 Cyc. 352. An allowance will be made, however, for only such services, as require legal skill. From the affidavits filed upon the motion, and the duties of the receiver, as appear from the entire record, it seems upon the record as it now stands, that legal counsel was necessary to the receiver, in the performance of certain of his duties, and that he did not abuse a wise discretion in the employment of counsel, and therefore, was entitled to have an allowance made him for a reasonable sum to compensate an attorney, for the necessary services, requiring legal knowledge and skill, which the attorney rendered him, and the court was in error in denying to him such an allowance. The judgment, overruling the motion of the receiver, is therefore reversed and the cause remanded with directions to the court to hear such evidence as the parties may desire to offer, and to make such an allowance as

will be a reasonable compensation for the attorney for the necessary legal services rendered the receiver in the performance of his duties as such, if it shall appear upon the hearing that the services claimed for were necessary.

The cause, as to the questions arising upon the appeal of the Fidelity & Columbia Trust Company, is therefore remanded for further proceedings in the circuit court, as in the opinion directed, and the judgment upon the motion of J. R. Paxton, receiver, etc., is reversed and cause remanded for proceedings not inconsistent with this opinion.