## Jennings v. Fidelity & Columbia Trust Company et al., and Three Other Cases.

(Decided August 22, 1931.)

LAWRENCE S. LEOPOLD for appellant Jennings.

R. RUTHENBERG for appellant Fitzenberger.

HUGH K. BULLITT for appellant Brewer.

HUMPHREY, CRAWFORD & MIDDLETON for appellee Kentucky Title Trust Co.

H. H. NETTELROTH, BRUCE & BULLITT, and GARNETT & VAN WINKLE for appellee Fidelity & Columbia Trust Co., receiver.

ROBERT G. GORDON and SQUIRE R. OGDEN for appellee Louisville Trust Co.

## OPINION PER CURIAM.

The four appeals above styled involved various questions arising out of the reorganization and rehabilitation of the Louisville Trust Company and will be disposed of in a single opinion.

The Louisville Trust Company was closed on November 17, 1930, by order of the board of directors, and four days later the Fidelity & Columbia Trust Company was appointed receiver. The appointment of the receiver was made by the circuit court upon the application of the state banking commissioner. The order of appointment directed the receiver "to take possession of all the books, accounts, papers, money and other assets of the Louisville Trust Co., including all evidence of indebtedness and all money and other assets and property held by it for any other company or concern, and all of the trust estates under its control." The receiver was further directed "to proceed with an investigation of the affairs of" the Louisville Trust Company, expressly authorized "to have control of its affairs," definitely required "to render a report of the Receiver's action to the Court," and finally requested to apply to the Court "as soon as possible," and "from time to time" for further directions. The receiver complied with the orders of the court and continued to discharge all the duties imposed upon it.

On July 16, 1931, the Louisville Trust Company filed an answer and cross-petition in the action in which the receiver had been appointed seeking a termination of the receivership, a return of the assets to the trust company, and the approval by the court of a plan of reorganization

of the Louisville Trust Company. It was shown that the capital stock of the trust company was $1,750,000 divided into 17,500 shares of the par value of $100 each. The court had theretofore authorized and directed the receiver to make an assessment of the full double liability upon the stockholders, and that action had been taken. The depositors had undisputed claims amounting to $11,500,000, and there were other undisputed liabilities aggregating $1,250,000. The trust company had issued collateral trust bonds in the sum of $4,250,000, which were secured by first mortgage real estate bonds and vendors lien notes of a face value in excess of the bond debts. At the time the Louisville Trust Company was closed, it held, as investment of trust funds confided to it in various fiduciary capacities, collateral trust certificates aggregating $5,696,700. The trust company had placed in a pool, called the ''General Mortgage Fund,'' numerous bonds and notes secured by real estate mortgages and vendors liens and had issued interest-bearing certificates, signed by it as trustee, ''payable, as to both principal and interest, out of said trust fund as in the trust agreement provided.'' After the appointment of the receiver for the Louisville Trust Company, a large number of trust estates were removed from the control of the receiver and new trustees were appointed to succeed the Louisville Trust Company. These successor trustees asserted that the Louisville Trust Company was liable for the trust funds so invested. The securities in the pool have a face value sufficient to satisfy all the certificates, but immediate liquidation of them would likely result in losses leaving a deficit to be borne by the holders of the certificates, or by the other creditors, if claims of that character were held to be preferred. It appears that the trust company made investments of trust funds in certain stocks which proved worthless. This has resulted in claims that are in dispute, but, if established, the liabilities would be augmented. The receiver had made no distribution, but had on hand large sums of money, and considerable valuable assets, which could be realized over a period of years, but not immediately without disastrous shrinkage.

The plan of reorganization worked out by the depositors' committee, was an elaborate one, but only certain features thereof need be noted for the purposes of the present decision. The stockholders recognized

that the original stock had become worthless, indeed a liability, and agreed to a cancellation thereof, so that new stock could be issued and sold to new stockholders, but without affecting the statutory double liability of the old stockholders.

The depositors were to take stock equal to 15 per centum of their respective deposits, and the remaining 85 per cent of the deposits were to be paid as follows: Twenty per cent thereof to be made subject to check upon completion of the reorganization; Twenty per cent thereof to be covered by a certificate of deposit bearing 3 per cent interest, due in two years; and 15 per cent to be made subject to check, one-third thereof in four months, one-third thereof in eight months, and the remaining one-third in twelve months after the effective date of the plan. The remaining 30 per cent of the deposits will be paid by Refunding Certificates which represent an interest in the Depositors' Refunding account and which requires no special explanation. The nonconsenting depositors are to be paid in full upon the reopening of the trust company.

The plan was agreed to by approximately 12,000 of the 13,500 depositors whose deposits amounted to $9,800,000, leaving about $1,700,000 of deposits to be taken care of otherwise.

A bondholders' protective committee had been formed to co-operate for the protection of the security for the $4,250,000 in bonds outstanding. It held a total of $3,750,000 of the bonds. The committee concurred in the plan, and accordingly deposited the bonds held by it. In lieu of the old bonds, the Louisville Trust Company, after the reorganization and reopening agreed to issue new bonds of like amount, but payable on or before ten years, and bearing a slightly reduced rate of interest. The receiver had realized and had in the pool about $340,000 which would enable the trust company, with certain other available funds, to redeem the bonds not in the hands of the bondholders' protective committee.

The reorganization plan contemplated a refunding arrangement respecting the $5,696,700 collateral trust certificates, as follows:

(1) The issuance of new ten-year 5½ per cent collateral trust notes of the Louisville Trust Company in exchange for the outstanding collateral trust certificates at par. These notes will be the direct obligation

of the reorganized Louisville Trust Company, whereas the Louisville Trust Company did not guarantee the present collateral trust certificates, the same having been issued by it as trustee and made payable entirely out of the pool of mortgages pledged to secure the payment thereof;

(2) The payment of accrued interest on the outstanding collateral trust certificates at the rate specified therein immediately upon the reopening of the Louisville Trust Company;

(3) The new 5½ per cent collateral trust notes will be issued under a trust agreement between the Louisville Trust Company and the Kentucky Title Trust Company, as trustee for the holders thereof;

(4) The new notes will be secured by the same collateral which is now pledged to secure the outstanding collateral certificates, and for that purpose, said collateral will be deposited with the Kentucky Title Trust Company, as trustee. Said collateral will be liquidated and the proceeds thereof will be distributed in accordance with the provisions of a collateral trust agreement.

It was represented to the court that continued liquidation of the securities, and regular administration of the estate through the medium of the receivership, would bring about losses to all concerned, whilst the execution of the plan of reorganization would reasonably result in greater security and prevent ultimate losses to the creditors of all classes.

It was shown that the plan had met with the approval of the financial and banking interests of the city.

The trust companies that had been appointed successors of the Louisville Trust Company in respect of particular estates were willing, with the authority and approval of the court, to make the exchange proposed. The estates remaining in the hands of the Louisville Trust Company, and which had no one to act for them, were committed to the receiver, specially named for the purpose, with directions to accept the plan and to make the substitution of the securities. The court entered an order requiring all creditors, stockholders, and others concerned to show cause, if any they had, why the reorganization plan should not be approved, and the rceivership terminated. The order was widely published for a period of ten days.

The result was a challenge of the plan in several particulars which will be stated in disposing of the objections interposed. The circuit court overruled all objections, approved the plan, and discharged the receiver, with certain reservations not necessary to be noticed specially. The four appeals now being considered are from the final judgments entered to effectuate the rulings of the chancellor.

Eugene C. Jennings, the beneficiary under a will of which the Louisville Trust Company is executor, filed a petition to be made a party and sought to enjoin the Fidelity & Columbia Trust Company, as receiver of that estate, from making the exchange of collateral trust certificates for the new collateral trust notes. He appeals from a denial of the relief sought and insists here that a court of equity, in administering property under a receivership, has no power to appoint a receiver for the unremoved trust estates, or to act for them in authorizing and accomplishing an exchange of 6 per cent collateral trust certificates for deferred 5½ per cent. trust notes.

Albert H. McKechnie and Eleanor E. McKechnie are beneficiaries under a will of which the Kentucky Title Trust Company is trustee, and they sought to restrain the trustee from exchanging the old collateral trust certificates for the new collateral trust notes. They question the authority of a court of equity in the circumstances presented to authorize the trustee, on behalf of the estates interested, to make such an exchange of securities.

Upon behalf of both Jennings and the McKechnies, it is urged that the scope of a receivership is confined to ministerial acts for the preservation of an estate; that the court has no right or power to invest a receiver with discretionary powers ordinarily invested in trustees; that the Fidelity & Columbia Trust Company was disqualified by its presence as a party to the action, to act as receiver for the unremoved trust estates; that reinvestment, in some instances, was forbidden by the instruments creating the trust, unless an advisory committee was consulted, which ought not to be obviated by a mere order of the court; that the exchange of securities ordered is without consideration; that the entire assets of the Louisville Trust Company are in lien for certain debts and can not be relieved thereof; and that the statutes of this state do not authorize a reorganization of a

corporation for which a receiver has been appointed, but require a final liquidation and distribution.

The Louisville Trust Company is the administrator of the Joseph W. Fitzenberger and Anna A. Reese estates. The beneficiaries of these two estates, by the same counsel, objected to the plan proposed because it failed to provide priority for them, because one-half of the capital stock was not set apart to secure fiduciary obligations and because the reorganization proposed tended to defeat the letter and spirit of the statutes of the state.

Annie Bullitt Brewer sought to recover from the Louisville Trust Company approximately $33,100 for the alleged illegal investment of trust funds of which she was the beneficial owner, and for an accounting of its stewardship of the trust.

The Brewer claims are in dispute and require further litigation to determine their merits. Her argument is that a combined bank and trust company, which has become insolvent and involved in a receivership, must be liquidated and wound up and may not be reorganized; that the fiduciary estates have preferred claims which should be preserved, and that the court is without power to make any order not in accordance with that conception of the matter; that the plan of reorganization is contrary to the Constitution because it constitutes merely a conditional offer of payment, dependent upon the future success of the venture, and deprives her without due process of her present property in the assets in the custody of the law; that the retention of $300,000 by the receiver for the payment of fees and expenses to be allowed hereafter, is erroneous and prejudicial; that the discharge of the receiver is void, because it reserves in it the authority to continue the collection of assessments upon stockholders; that the Louisville Trust Company was not possessed of legal capacity to plead in the case; and finally that there was a defect of parties to the answer and cross-petition of the Louisville Trust Company in that the state banking commissioner, the commonwealth, and the creditors were not named therein.

We have thus indicated as fully as possible within reasonable limits, the various contentions that have been advanced, and will proceed to announce the conclusions of the court respecting them.

Repetition, in so far as possible, will be avoided, and elaboration of the views of the court will not be atempted further than is required to make clear its conclusions.

The general powers of a court of equity embrace the administration of estates, of insolvent corporations, and of trusts. When property has been taken into the custody of the law, as by the appointment of a receiver, the jurisdiction of the court over such property is plenary and exclusive. Hazelrigg v. Bronaugh, 78 Ky. 62; 21 C. J. p. 119, sec. 97; 21 C. J. p. 129, sec. 124; 21 C. J. p. 134, sec. 117; 53 C. J. secs. 117, 118, pp. 93-95. The absence of precedents, or the mere novelty of a particular case, presents no obstacle to the exercise of jurisdiction by a court of equity. It is the distinguishing characteristic of equity jurisdiction that it will apply settled rules to extraordinary and unusual conditions, and mold its decrees so as to effect equity among the parties. 21 C. J. p. 135, sec. 13; City of Earlington v. Powell, 226 Ky. 353, 10 S. W. (2d) 1060. The power to appoint a receiver is not disputed, as indeed it could not be, and the power to terminate a receivership is a necessary incident of the power to appoint. 53 C. J. p. 228, sec. 384. The agent of the court is necessarily subject to control by the court.

The contentions variously put forward that the court was without power or jurisdiction in the premises is wholly lacking in merit. Fletcher, Cyc. of Corp. chap. 61, secs. 4832-4840. Possessing the power to terminate the receivership and to return the property to its owners, upon such terms for the security of the creditors of all classes as the sound discretion of the court might dictate, it remains only to examine the proceedings to ascertain whether the court has exercised its jurisdiction in accordance with the usages and practices of equity. The appointment of the special receiver for the trust estates in the custody of the court was a proper exercise of jurisdiction over such property. 53 C. J. p. 32, sec. 18; 53 C. J. pp. 42, 43, secs. 28, 29; Holbrook v. Fyffe, 164 Ky. 435, 175 S. W. 977; 2 Clark on Receivers, sec. 1001; Thompson v. Page, 76 S. W. 128, 25 Ky. Law Rep. 557. "The power of a court of equity to appoint receivers, where the property is already in the hands of administrators, is fully established by the authorities, although the power is to be exercised with caution, and not on light.

grounds'' (citing many authorities). Willinger v. German Bank of Baltimore, 132 Md. 237, 103 A. 433, 435.

The directions given the special receiver to make the the exchange of securities offered was within the power and province of the court in the administration of the trust estates. The court had power to release the precarious securities formerly held in the trust estates, already threatened with litigation and delay, the result of which could not be foreseen, and to accept therefor the obligations of a solvent concern affording every prospect of absolute security. The aid and advice of the chancellor is always available in the determination of such questions in the administration of estates (18 Cyc. 407), and when the various securities affected are in the custody and control of the court, no possible doubt can arise of the power or propriety of such a substitution. The same reasoning applies to the authority and approval given the successor trustees respecting the same subject.

Section 300 of the Civil Code of Practice forbids the appointment of certain parties as receivers, but that section has no application to the receiver appointed in this case, which was not affected by the character of private interest or of adversary relation that disqualified it. It was already receiver of the Louisville Trust Company and its presence as a party to the action was only in that relationship. It was not a party in its private capacity. It had no private interest to serve and was not disqualified to act as the agent of the court in effectuating its directions. Indeed, the court's direction to the receiver respecting the exchange of securities might have been accomplished in other ways, but the special arrangement made was a convenient form of executing the judgment of the court. The action of the court in that matter is not subject to any of the criticisms leveled at it.

Notice to the beneficiaries of the trust was not essential under the facts presented in this case. Wakenva Coal Co. v. Johnson, 234 Ky. 565, 28 S. W. (2d) 737; Haggin v. Straus, 148 Ky. 140, 146 S. W. 391, 50 L. R. A. (N. S.) 642; 2 Tardy's Smith on Receivers, sec. 731; 21 C. J. p. 290, sec. 292; Black v. Elkhorn Coal Corp., 233 Ky. 593, 26 S. W. (2d) 481.

The contention that there was no consideration for the novation is illusory. The extinguishment of the old obligation was sufficient consideration for the execution of the new agreement. 46 C. J. p. 613, sec. 58; Richards

v. Davis, 13 Ky. Op. 746; Russell v. Centers, 153 Ky. 469, 155 S. W. 1149; Mutual Benefit Life Ins. Co. v. First National Bank, 160 Ky. 538, 169 S. W. 1028. The new and enlarged undertaking of the reorganized trust company is a good and sufficient consideration for the release of the whole claim asserted by virtue of the collateral trust certificates.

The provisions of wills to the effect that reinvestments may be made upon the advice of a committee have no application to the court in administering insolvent estates. This is so because the court is not embraced within the purview of such restrictions, and the substitution of securities under circumstances such as exist in this case is not the investment of free funds, but an adjustment to save an imperiled investment from imminent loss. Fletcher, Cyc. Corp. sec. 4852. The court may be limited in some respects by a trust instrument, and will follow it so far as possible. But an emergency might arise rendering it necessary for the court to depart from such directions. 39 Cyc. 406; McIntire v. Zanesville, 17 Ohio St. 352. Advisory committees are not necessary parties when the estates concerned become involved in litigation. The purpose and intent of the testator in providing for such assistance to the trustee was to advise and instruct his judgment, and not to curtail the plenary power of a court of equity when its supervision and control becomes necessary.

The claims of preference in a distribution of the estates in the hands of the receiver may be adjudicated or postponed provided the rights of the creditors are safeguarded in the postponement. When the court becomes satisfied from the record that the claims of the creditors of all classes are properly secured, and that the debtor involved is prepared to meet his obligations when the receiver is discharged, there can be no doubt of the power of the court to discharge the receiver without enforcing the payment of the claims, and without impounding funds especially for the purpose of paying them. Such would be true if the lien claim was not doubtful or in dispute. Whilst such claims here are stoutly denied and not entirely free from doubt (Ohio Valley B. & T. Co. v. Pettitt's Trustee, 206 Ky. 818, 268 S. W. 535), we need determine no more respecting them than that no abuse of discretion on the part of the chancellor appears. On the contrary, it is clear that the court

exercised a sound discretion that tends to promote the interests of all parties concerned.

A reorganization of a corporation in the hands of the receiver is authorized by law, favored by the courts, and comports with public policy. Fletcher's Cyc. of Corp. Chap. 61, sec. 4840. When the court is convinced that the stockholders or creditors of the corporation are prepared to go forward with its affairs and to discharge its obligations, a reorganization may be approved. The appointment of a receiver suspends the normal functions of the corporation but it does not destroy its life. 14 C. J. sec. 3217, p. 977. It was competent to sue and be sued, and to prosecute or defend pending actions. The changes to be made in the capital stock of the Louisville Trust Company were authorized by the statutes of this state. The depositors were free to acquire the stock, and when provision was made for the security of the various classes of creditors in a manner to justify the approval of the court, no possible room remains for doubt of the legality of the reorganization. 14a C. J. p. 1039 et seq.

Whether the fiduciary creditors are entitled to any preference, or to what extent, will become immaterial when the trust company reopens because it will be prepared to discharge its obligations.

It cannot be held that the plan of reorganization is contrary to the Constitution (Constitution, sec. 13), because no provision is made for the immediate payment of all debts. The claims of Mrs. Brewer are not dependent upon the future success of the trust company, but her present claims will be satisfied as soon as adjudicated. Her argument assumes that she has a liquidated claim, presently payable out of available funds, which has been postponed indefinitely to await and to abide the success of a new venture. But the facts defeat the argument. Her claim is disputed. If she reduces it to a judgment it will be paid. A fund sufficient to pay her claim, as well as other claims of that class, is definitely set apart. It appears from the pleadings, and is an admitted fact, that the sum of $1,300,000 is to be held separate and apart for the liquidation of all such claims as Mrs. Brewer asserts, and all of which do not exceed the amount indicated.

The claim of the receiver for fees and expenses constitute part of the costs, and is entitled to priority as such. Fidelity & Columbia Trust Co. v. Grommes &

Ullrich, 186 Ky. 345, 216 S. W. 1078. The receiver's fees and expenses have not been determined, but the court permitted the receiver to retain the sum of $300,000 as a security therefor. It was not improper thus to secure the fees and expenses of the receiver. The amount retained is the property of the Louisville Trust Company. The compensation and reimbursement of the receiver must be agreed upon by the parties or fixed by the court. When the allowances are made and approved by the court, the right of review will arise on behalf of any person aggrieved. No error was involved in setting apart an ample fund for the ultimate payment of fees and expenses. Whatever remains of the fund after the claims against it are paid will belong to the reorganized trust company. The amount retained by the receiver is not intended to prejudge the amounts to be allowed and will have no bearing upon that question. The discretion of the court as to that matter was not abused.

The argument that the court may not discharge the receiver in part and retain his services for a limited purpose is lacking in substance. The power of the receiver over the property surrendered is extinguished, but control may be reserved over other property or rights, which require further action. The receiver may be retained for a special purpose, without requiring him to serve for all purposes. The facts and exigencies of each particular case must determine how far the objects of the receivership have been attained. It may be concluded in part and continued as to any unsettled subjects of the receivership. The matters yet remaining for the receiver to do are subject to the supervision and control of the court, but that does not affect or impair the right or duty of the court to release the property not involved in the further work of the receiver, and to discharge the receiver pro tanto.

There was no defect of parties defendant to the answer and cross-petition of the trust company.

The state banking commissioner was a party representing the commonwealth. He appeared in the case, and is not complaining. The creditors were represented (21 C. J. p. 290, sec. 292) and have been provided for, and neither necessity nor propriety called for their personal presence in the action.

Upon the whole case we approve of the findings of facts and conclusions of law manifested by the decrees of the chancellor.

The judgment in each case is affirmed.

Whole court sitting, except Judge Dietzman.