## ROPTE v. EVANS.

### No. 7860.

Court of Civil Appeals of Texas. Austin.

Oct. 4, 1933.

Rehearing Denied Jan. 10, 1934.

Hart, Patterson & Hart, of Austin, for appellant.

Dan Moody, of Austin, for appellee.

BAUGH, Justice.

Appeal is from a judgment of the district court awarding to appellee the ownership of a certain sales contract or agency entered into on November 26, 1929, between W. W. Robinson and the R. & G. Mineral Water Company, a Delaware corporation, on the one hand, as joint owners of a tract of land adjacent to the city of Austin, on which was situated a natural mineral water well; and one Charles H. Apple, of Kansas City, Mo., on the other.

This contract recited that "the party of the second part (Apple) desires to secure the exclusive selling privilege of the R. & G. Natural Mineral Water for the territory of the United States of America," except in Austin and its suburbs, and that the owners of the land and well "are willing to grant such privilege."

Section 1 of said contract grants to said Apple for a period of 50 years "the sole, whole and exclusive selling privileges or selling agency" for the United States, except in the reserved area, of said water.

Section 2 bound Apple to spend $20,000 for advertising said water and placing same on the market.

Sections 3 and 4 obligated Apple to pay the owners 70 cents per case of 12 half-gallon bottles of said water, to be paid at the time shipment from Austin is made; and in any event to pay at least $350 on the first of each month, failure to do so subjecting the contract to forfeiture by the owners.

Section 5 gave Apple or his agents free access to said land on which the well was located at all times; exclusive use of the warehouse for storage, packing, and shipping purposes; and the right to erect on the premises at his own expense additional housing or install additional machinery, same to remain his own property, unless he breached said contract.

Section 6 reserved to the owners the right to remove the warehouse and bottling works to another tract of land, and erect, if they chose, a sanitarium or hotel at said well, and to pipe the water from said well to the newly located warehouse and bottling works. They were not, however, to use such an amount of water from said well as to jeop-

ardize the supply of water needed by Apple to carry out his contract.

Section 7 provided that the contract should cover any additional wells that might be operated on the premises; and sections 8 to 11 provided for settling by arbitration any disputes under the contract. The closing paragraph of the contract recited: "This contract and all its terms and conditions shall extend to and be binding upon the heirs, devisees, executors, administrators, and successors and assigns of the parties hereto." .

· ¨ It appears that Charles H. Apple assigned this contract to a common-law trust or partnership, known as the Austin Radium Water Company, organized under the laws of Missouri, and owned by, or composed of, Charles H. Apple and L. P. Fuller; and that Apple fraudulently induced one Flossie E. Wilcox to invest some $7,500 in said enterprise. In June, 1930, Flossie E. Wilcox sued Apple, Fuller, and the Radium Water Company, in the circuit court of Jackson county, Mo., alleging fraud; sought to recover her money; asked for appointment of a receiver, and for an injunction to restrain Apple et al. from selling said contract. The defendants, including Apple, answered in that suit. A receiver was appointed on July 29, 1930, to take charge of the assets of said defendants, including said contract, and the defendants enjoined from disposing of any of said property. On April 20, 1931, the receiver applied to the court for an order to sell the assets of the defendants, including specifically said sales contract; and sale was made by the receiver to Fred C. Ropte, and approved by the court on April 22, 1931. On April 25, 1931, judgment was rendered in favor of Flossie E. Wilcox against said defendants for the amount sued for.

Meantime, however, after said suit was brought, after said receiver was appointed, and after Apple and his codefendants were directed by the Missouri court to turn over to the receiver all of their assets, and expressly enjoined from disposing of said contract, said Charles H. Apple by written instrument dated March 16, 1931, executed in Chicago, Ill., assigned to C. P. Evans, appellee herein, said contract of November 26, 1929. The issue presented on this appeal is whether Ropte became the owner of said contract as purchaser at the receiver's sale, the regularity of which sale is not attacked, or whether Evans is owner thereof under the assignment from Apple dated March 16, 1931.

██ It is the contention of appellee, and obviously the view taken by the trial court, that said contract of November 26, 1929, conveyed an interest in real estate situated in Texas, and that a sale thereof by a receiver appointed by a court of another state was, under article 2294 and article 2313, R. S. 1925, and the decisions of this state, void, and passed no title to Ropte. If said contract does convey an interest in said realty, appellee is cor-

rect; and an easement over or upon realty is deemed an interest in land, over which the courts of another state, or a receiver appointed by a court of another state, have no jurisdiction. Moseby v. Burrow, 52 Tex. 396; Holt v. Guerguin, 106 Tex. 185, 163 S. W. 10, 50 L. R. A. (N. S.) 1136; Henslee v. Boyd, 48 Tex. Civ. App. 494, 107 S. W. 128; Nesom v. Bank (Tex. Civ. App.) 174 S. W. 715; Settegast v. Foley Bros. D. G. Co., 114 Tex. 452, 270 S. W. 1014.

██ We do not think, however, that the rights granted to Apple under said contract amount to an easement, but rather constitute a mere license. While the distinction between a license and an easement as applied to real estate is sometimes rather subtle, generally an easement constitutes an interest in the land itself, while a license merely confers a privilege to do some act or acts upon the land without possessing any estate therein. Settegast v. Foley Bros., supra; 15 Tex. Jur. 775; 19 C. J. 871; 37 C. J. 279.

The contract in question did not convey nor sell to Apple the well on said land nor the entire output of water therefrom. It was primarily, as its terms expressly state, merely an agency contract to sell said water. Apple was nowhere given the right to take possession of, or control, the well. While he was given exclusive use of the warehouse, owned, we presume, by the owners of the land, for bottling and packing purposes, the owners of the land reserved the right to remove these improvements entirely off the premises, to furnish to Apple water at the new location, and to erect a hotel at the well. It is obvious, therefore, that Apple's rights of access to the premises, and his use thereof, were solely for the purpose of bottling and preparing for shipment the water in question, after it had been taken from the well by the owners of the land, had become personal property, and had been delivered to Apple on the premises. This we think constituted but a privilege or license upon the land and vested in Apple or his assigns no estate whatever in the land itself. We can see no distinction in principle between the sale of said water as personalty with the right of the purchaser to enter upon the premises, bottle and remove same therefrom, and the sale as personalty of timber on the land with the right in the purchaser to enter upon the premises and cut and remove same; or the sale of gravel with the right vested in the purchaser to enter upon the premises, dig pits, and construct roads for the removal of same. Such contracts have been held not to involve an estate in land, but to be only licenses carrying no interest in the land itself. Sutton v. Wright & Saunders (Tex. Civ. App.) 280 S. W. 908; Philip A. Ryan Lbr. Co. v. Ball (Tex. Civ. App.) 177 S. W. 226; Lodwick Lumber Co. v. Taylor, 100 Tex. 270, 98 S. W. 238, 123 Am. St. Rep. 803. Under the contract we think no title to the water passed out of the owners of the land until it was ready for ship-

ment and paid for. As such it was clearly personalty at the time of sale.

That being true, the contract, subject to assignment under its terms, was such property of Apple that a receiver appointed by a court of competent jurisdiction, which had jurisdiction over his person, as the Missouri court was shown to have had, could take possession of. This the receiver was ordered to do and undertook to do as a part of Apple's assets for the benefit of his creditors. The property was therefore in effect in custodia legis, and an attempted sale thereof by Apple while such receivership was still pending either within or without the state of Missouri was void. The jurisdiction of the court through the receiver over the property having once attached, it became plenary and exclusive. Jennings v. Fid. & Columbia Trust Co., 240 Ky. 24, 41 S.W.(2d) 537; 53 C. J. 95, 116; Russell v. T. & P. Ry. Co., 68 Tex. 646, 5 S. W. 686; Hacker v. Hacker (Tex. Civ. App.) 4 S.W.(2d) 218; Jaggers v. Sparks, 127 Ark. 567, 193 S. W. 67; Newton v. Buck (C. C. A.) 77 F. 614.

The reasons for such a rule are obvious. If a party whose property has been subjected to a receivership could, by removing such property to another state, after the receiver has been appointed, dispose of same, instead of delivering it to the receiver in violation of the court's order, the rights of creditors could often readily and easily be defeated and the judgment of a court of competent jurisdiction in effect nullified.

The judgment of the trial court awarding the ownership of said contract to appellee and enjoining appellant from interfering with appellee's performance thereof is reversed, judgment here rendered vesting the title and ownership of said contract of November 26, 1929, in appellant Fred C. Ropte, and the injunction against him is dissolved. As to the cross-action of Ropte against Evans for damages, the cause is reversed and remanded.

Reversed and rendered in part, and in part reversed and remanded.