## Cralle et al. v. Louisville Title Company et al.

(Decided September 9, 1932.)

LAWRENCE S. LEOPOLD, JOHN J. DAVIS and LEO T. WOL-FORD, for appellants.

HUGH B. FLEECE, ANDREW M. SEA, JR., BRUCE & BULLITT, T. KENNEDY HELM, HUSTON QUIN, and B. A. FARNSLEY for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This appeal involves the validity of the reorganization of the Louisville Title Company and its subsidiary,

the Title Guarantee Trust Company, and of the steps taken thereunder by the reorganization committee, and the propriety of the judgments approving such steps and putting them into effect.

The situation calls for an immediate decision, and it is not possible to prepare an extended opinion giving in detail the circumstances leading up to the reorganization, the details of the plan, and the several questions presented. In the circumstances we shall give only our conclusions, which may be summarized as follows:

1. The Louisville Title Company and the Title Guarantee Trust Company as trustees had sold a large number of real estate bonds, payment of which they had guaranteed. Owing to the depression the two companies were unable to continue their business. A receiver was appointed for the Louisville Title Company. Thereafter a reorganization committee, composed of some of the leading business men of the state, was appointed, with the view of salvaging the assets of the two corporations and protecting the bondholders from certain loss. A reorganization agreement and an amended agreement was prepared. Thereafter some alterations and changes were made. The plan as amended and changed represents the best thought of the members of the reorganization committee. In such circumstances it is the policy of the court to defer to the judgment of the reorganization committee and approve its action unless it is made to appear that the rights of interested parties will be adversely affected, a situation not here presented.

2. It is not always practicable, or even possible, to formulate in advance a plan of reorganization that will meet every possible criticism or objection. It therefore is usual to confer on the reorganization committee the power to make such changes or alterations in the plan as they may deem proper. The reorganization agreement in this case contains the following provision:

"15. The Reorganization Committee may, with the consent and approval of the Trustees hereinabove named, modify, alter, amend, or change the provisions of this agreement, or any of them, if, in their judgment, such modification, alteration, amendment, or change will better effectuate the purposes herein intended, except as to the following matters:

"(a) Participating Bondholders shall, in no event, be called upon to assign more than fifteen

(15) per cent of the outstanding principal of the bonds respectively deposited by them hereunder, for the purposes of said reorganization, or any other purpose.

"(b) Neither the full amount assigned by said Participating Bondholders, nor any part thereof, shall be used by said Trustees or said Reorganization Committee for any other purpose than the purchase of preferred stock, as provided for in this plan."

No changes were made by the committee as to the matters excepted in paragraphs (a) and (b), but it is insisted that the other changes made were so radical as to be a departure from the original agreement. It would be difficult to find broader language than that quoted. In our opinion it is sufficiently clear, explicit, and comprehensive to authorize all the alterations, changes, and modifications made by the committee. The result is that those bondholders who deposited on the faith of the original agreement, as well as those who deposited on the faith of the agreement as thereafter altered and amended, are bound by their action.

3. The claim that the plan of reorganization is unfair and unreasonable in permitting old stockholders of the defunct companies to become stockholders in the new companies on a basis more favorable to the stockholders than the privileges offered to the bondholders is more fanciful than real. There is nothing compulsory in the reorganization plan. The bondholder has the option to accept or reject. If he rejects the plan, he is not concerned with its provisions, provided none of his rights are impaired, which does not appear.. On the other hand, all that the depositing bondholder wants is his money, and it is perfectly clear that he will receive substantially all of it, or its equivalent in preferred stock before the common stock has any substantial value.

4. We do not find any merit in the insistence that any right of the nondepositing bondholder is adversely affected by the reorganization plan. He still has his security unimpaired, and his right to share in any assets of the defunct companies supporting their guaranty. In case of a sale by the receiver of such assets to one of the new companies, the court will protect his rights by seeing that the purchase price is fair and reasonable.

756

5.  It was proper for the court on the application of those interested to appoint the Louisville Title Insurance Company trustee under the mortgage deeds of trust.

6.  It was also proper for the court to direct all the banks and trust companies with which the bonds of the Title Guarantee Trust Company were deposited under the reorganization agreement to deliver same to the Louisville Title Insurance Company, and all the depositories of the Louisville Title Company bonds to deliver them to the Louisville Title Mortgage Company.

The judgments in all respects are affirmed, and mandate will issue forthwith, subject to the right of any party to file a petition for rehearing within the required time.