## Dorman, State Banking and Securities Commissioner, et al. v. Jones et al.

(Decided Dec. 18, 1934.)

F. A. HARRISON for appellants.

E. C. MOORE for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

We are required to review a judgment decreeing the reorganization of the Farmers' Bank of Corinth, Grant county, Ky., and directing the state banking and securities commissioner to assent to, and approve, its reorganization.

The bank, on May 10, 1933, closed its doors and placed all of its assets and property of whatever nature in the possession of the banking and securities commissioner, as provided by section 165a-17 (2), Ky. Stats. Supp. 1933. Since that time, he, by one of his deputies, has been continuously in charge of it, exercising thereover the authority conferred on him by section 165a-1 et seq.

The act of 1932 (section 165a-64, Ky. Stats. Supp. 1933) provides a method for the reorganization of closed banks. We have reviewed this statute in Dorman v. Dell, 245 Ky. 34, 52 S. W. (2d) 892; Milner, etc., v. Gibson, 249 Ky. 594, 61 S. W. (2d) 273; Sweeny v. Jefferson County Bank's, etc., 250 Ky. 187, 61 S. W. (2d) 1090.

The sole question presented in the pending case is one of fact. The bank, at the time it was placed in the hands of the banking and securities commissioner, was capitalized at $25,000, and had issued certificates of

stock of the face value of $100 per share to the stockholders, for the full amount of the capital. Some time after the bank was placed in the hands of the banking and securities commissioner, the holders of 192 shares of the certificates of stock and about 85 per cent. of the depositors signed a separate writing agreeing to reorganize and reopen the bank. The stockholders agreed to surrender 50 per cent. of their stock to the depositors representing 10 per cent. of the deposits payable in the stock and to pay an assessment of $35 per share on their capital stock; and $5 per share to Smith and Gibbons for their work and expenses of perfecting the plan of reorganization. They advanced to them $1 per share as an expense fund. The depositors agreed to accept the balance of their deposits as follows:

"Liquidating certificates, 15%; stock certificates, 10%; dividend payable in cash within 30 days from the organization, 22%; certificates of deposit bearing 3% interest, due in 12 months, 17%, due in 24 months, 18%, and due in 36 months, 18%."

They further agreed to pay Smith and Gibbons 2 per cent. of their deposits; one-half of 1 per cent. or 50 cents per hundred as and when the contract for the reorganization shall be signed by the depositors—one-half as an advance for their expenses—the balance or 1½ per cent. when the bank opened for business and the cash dividends paid. The nonconsenting depositors who owned deposits less than $25 and the nonconsenting stockholders are fully protected by the law.

The consenting depositors and agreeing stockholders including the proposed board of directors of the reorganized bank presented the commissioner the written agreements of the depositors and stockholders with the proposed plan of reorganization for his approval. He refused to encourage or co-operate and also to approve the plan of reorganization.

John W. Jones, and others, as the elected board of directors of the bank, in their own right, and in behalf of all of its other stockholders and depositors, filed this action against the banking and securities commissioner, and the acting liquidating agent, and sought the court's approval of the plan of reorganization and an order directing and requiring the banking and securities commissioner to approve the plan of reorganization. Prior to the plan of organization, the liquidating agent in

charge of the bank selected three individuals to invoice and appraise the notes of the bank, which they did and reported their appraisal. It is a part of this record. After this action was filed, the notes belonging to the bank again were appraised by two individuals, seemingly by agreement of the parties to the action.

It is conceded in the briefs of the parties that the financial set-up of the reorganized bank is as follows:

### Assets.

| | | |
|---|---|---|
| (a) | Notes appraised as good | $ 91,120.15 |
| (b) | Accumulated interest | 6,312.31 |
| (c) | Building and fixtures | 4,800.00 |
| (d) | Stock assessment | 6,720.00 |
| (e) | Cash on hands | 13,526.90 |
| | Total Assets | $122,479.36 |

### Liabilities.

| | | |
|---|---|---|
| (a) | Capital Stock | $ 22,500.00 |
| (b) | Deposits | 88,141.85 |
| (c) | Interest, Atty. fee, ins. | 1,749.28 |
| | Total | $112,391.13 |
| | Surplus Assets | $ 10,088.23 |

It is not disputed that of the notes on hand, included in the financial set-up, exclusive of interest, amounting to $91,120.15, are good and worth their face value with interest. Those not regarded good aggregate $23,084. The testimony of numerous witnesses placed the value of the latter at 50 cents on the dollar. However, they are not included in the financial set-up of the reorganization.

The facts herein set forth are stated in the petition. The banking and securities commissioner and the liquidating agent traversed it and affirmatively pleaded the bank was insolvent, and, if opened by the court or the commissioner, the result would be a second closing at a later date; the territory in which the Farmers' Bank of Corinth engaged in business was already accommodated with adequate banking facilities, sufficient to take care of the necessities of business within the town of Corinth, "and its immediate environments." They further pleaded that the plan of reorganization "purports to pay to Smith and Gibbons two (2%) per cent. of the deposits of the bank when such expense is unnecessary and excessive"; that the banking and se-

curities commissioner is "ready, willing and anxious to reopen and reorganize the bank as soon as it is in condition to do so without the incurring the expenses of two (2%) per cent. of the deposits or any expense on the part of the depositors." The affirmative allegations of the answer were traversed by a reply.

The liquidating agent is now, and has been, receiving, at the expense of the bank, a salary of $100 per month and been in charge of its liquidation for almost a year. The banking and securities commissioner, in his testimony, claims it will take two and a half years to complete the liquidation. The only testimony offered in support of the defenses is the opinions of the banking and securities commissioner, his office deputy, the liquidating agent and the deputy banking commissioner in charge of the securities commission. That in behalf of the members of the proposed board of directors comprises the opinions of the stockholders, depositors, based upon detailed facts upon which they were formed.

The evidence discloses that the cash on hand is $13,526.19, to which is to be added cash $6,720, the $35 per share stock assessment. The testimony of the liquidating agent discloses that certain makers of notes owned by the bank aggregate $11,100, and had completed their arrangements with the Home Owners' Loan Corporation and the Federal Land Bank for the taking up their notes within 30 days. This $11,100 is equivalent to cash on hand. The directors, anticipating the reorganization and reopening of the bank, and the probability of it having to pay out to the depositors in cash 22 per cent. of their deposits within 30 days after its reopening, have perfected arrangements for the bank to borrow, from other local banks, the sum of $10,000 within 30 days after its reopening, in anticipation of paying the 22 per cent. of the deposits, and so as to have on hand surplus cash sufficient for safe banking purposes.

In his testimony, the banking and securities commissioner protested the bank's reorganization and reopening on the premise that no arrangements had been perfected to obtain insurance from the United States government for the benefit of the depositors. The testimony of Mr. Clark, an experienced banker and former deputy banking commissioner, is a sufficient response to this objection. It reads:

"In fairness to all, the impression was made last Fall that a closed bank could not get insurance until it was opened, but since January 1st, or February, the facilities of getting insurance has been available to closed bank, when and as if reopened."

A contention of like nature was disposed of by us adversely to the banking and securities commissioner in Milner v. Gibson, supra.

The depositors by writing voluntarily agreed to pay out of their own funds an amount equal to 2 per cent. of their several deposits to Smith and Gibbons for their work and expenses in perfecting the plan of reorganization. To this portion of their contract, the banking and securities commissioner strenuously objects, and relies upon it as the chief basis of his refusal to approve the plan. We are not impressed with such reason for his nonaction. Manifestly, it is no concern of his nor of the court what the depositors shall do with their own means. Their agreement to pay the 2 per cent. was voluntary and was tantamount to choosing alternatives—either to pay $100 a month to the liquidating for two and a half years or longer, or the 2 per cent. to Smith and Gibbons for actual relief; nor are we convinced of the soundness of the defenses of the commissioner that in his opinion, though the bank should be reopened, it will later again be closed, and that the community neither needs nor justifies its reorganization. The evidence abundantly showing the bank is and will be in good financial or solvent condition, when reorganized on the set-up proposed by 85 per cent. of the depositors and stockholders owning 192 shares, the mere opinion of the banking and securities commissioner, and that of his office assistants and the liquidating agent without a statement of the facts supporting it, as to what may or will happen to the bank in the future, is not a sufficient justification for declining to approve the plan of reorganization.

"A reorganization of a corporation in the hands of the receiver is authorized by law [now by statute], favored by the courts, and comports with public policy." Jennings v. Fidelity & Columbia Trust Co., 240 Ky. 24, 41 S. W. (2d) 537, 542. It is the solemn duty of the commissioner like unto that of the courts to observe and respect this policy. And when the banking and securities commissioner or the court is convinced that the stockholders and depositors, or creditors, are prepared

to go forward with the bank's affairs and to discharge its obligations, a reorganization should be approved. Without giving weight to the judgment of the circuit court, we unhesitatingly approve the plan of reorganization, and the judgment so decreeing.

Wherefore the judgment is affirmed.

The whole court sitting.