## Rubarts et al. v. United States Trust Co. et al.

(Decided Feb. 5, 1935.)

DODD & DODD for appellants.

BOOTH & CONNER, A. M. SEA, Jr., and BRUCE & BULLITT for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Under a written agreement between the Title Guarantee Trust Company and the Louisville Trust Company dated April 14, 1927, the Louisville Trust Company agreed to act as trustee of securities and cash deposited with it to secure the payment of principal and interest of collateral trust bonds issued by the Title Guarantee Trust Company and sold to investors. The collateral trust bonds were guaranteed as to payment of both principal and interest by the Louisville Title Company.

On June 22, 1931, the affairs of both the Title Guarantee Trust Company and the Louisville Title Company were placed in the hands of the proper authorities of the commonwealth of Kentucky for liquidation. On that date the Title Guarantee Trust Company had outstanding collateral trust bonds of the par value of $2,215,000. There were deposited with the trustee to secure the payment of these bonds securities of the approximate value of $2,400,000. The securities deposited with the trustee consisted principally of notes, bonds, and other evidences of indebtedness of individuals which were secured by mortgages on real estate most of which was located in or near Memphis, Tenn.

After the failure of the Louisville Title Company and its subsidary, the Title Guarantee Trust Company, a large majority of their creditors adopted a plan for the reorganization of the business and affairs of the

two corporations, and, as a result of these plans, the Title Insurance & Trust Company was organized. The plans adopted provided that owners of collateral trust bonds, which had been issued by the Title Guarantee Trust Company, who wished to accept the terms, provisions, and privileges of the reorganization agreement, might do so by depositing with one of the depositaries therein designated the bonds owned by them and by receiving therefor a negotiable certificate and receipt signed by such depositary. By depositing their bonds and accepting the depositary certificates, the bondholders agreed that 15 per centum of the par value of the principal amount of the bonds so deposited should be used by the trustee named in the reorganization agreement to purchase at par, for and in the names of such participating bondholders, the preferred stock of the new company to be organized. This 15 per centum of the par value of the principal amount of the bonds was to be deducted and withheld from the first funds collected on account of the principal of the mortgage, or mortgages, securing payment of such bonds.

The reorganization plan was attacked chiefly on the ground that it adversely affected the rights of the nondepositing bondholders. The plan was approved by this court in the case of Cralle v. Louisville Title Company, 244 Ky. 753, 52 S. W. (2d) 891. The Louisville Trust Company was removed as trustee by the owners of more than three-fourths of the collateral trust bonds under a provision of the trust agreement of April 14, 1927, which gave them that power, and the Title Insurance & Trust Company was appointed trustee. The Louisville Trust Company contested the right of the bondholders to remove it as trustee, but in Louisville Trust Company v. Title Insurance & Trust Company, 255 Ky. 195, 72 S. W. (2d) 1040, it was held that the power of removal had been properly exercised. In the meantime, the appointment of the Title Insurance & Trust Company as successor trustee was withdrawn, and on January 31, 1934 the appellee United States Trust Company was appointed trustee under the instrument dated April 14, 1927. Section 10 of that instrument reads:

"If default shall be made by the Trust Company in the payment of the principal or interest of any of its bonds, such payment having been demanded at the Trust Company's office, in the city of Louisville, Kentucky, and if such default shall

continue sixty (60) days after such demand, it shall be the duty of the Trustee, within ninety (90) days after notice in writing of these facts, being first properly indemnified for its costs and expenses to be incurred, to proceed by sale, public or private, as it may be deemed best, or by other lawful means, to realize from the securities in said trust fund, so much as shall be necessary to pay all of the Trust Company's bonds or interest that may then be due, and the cost of the proceedings; and immediately pay the same costs, provided that if after raising said sum, the remaining securities, or securities and cash in said trust fund, at the values heretofore prescribed, and the interest then accrued on same, shall not equal in amount the par value of the Trust Company's bonds then outstanding upon which default has not been made, and any interest then accrued upon the same, it shall be the duty of the Trustee, before paying out or distributing any of the money realized from the funds, as hereinabove provided, to call upon the Trust Company to make good such deficiency in the remaining bonds within thirty (30) days by deposit either of cash or collateral security equal in amount at the values heretofore prescribed, to such deficiency, and in the event of the failure of the Trust Company to comply with such demand, then all of such Trust Company's bonds shall immediately become due and payable, and it shall be the duty of the Trustee to hold the money theretofore realized from the trust fund and to proceed forthwith by foreclosure or sale (public or private, as it may be deemed best), or other lawful means, to reduce all of said trust fund to cash, and then to pay first its own proper expenses and charges, and then all of the Trust Company's bonds and interest thereon, out of all the funds realized from said trust fund, whether at one time or another, and if the funds realized be not sufficient to pay all of said bonds and interest in full, then to pay the same pro rata, without preference to any one bond over another, or to interest over principal, or principal over interest; and in the event all of the Trust Company's bonds and interest thereon be not thus paid, it shall be the duty of the Trustee, upon further reasonable indemnification, to proceed to collect from the Trust Company such deficiency.''

On September 27, 1934, the United States Trust Company, trustee, filed in the Jefferson circuit court a petition for a declaration of rights against the Title Insurance & Trust Company et al., including the appellant Lona Rubarts, administratrix of the estate of G. W. Rubarts, deceased, a nondepositing bondholder, and it was asked that she be permitted to defend on behalf of all others similarly situated. It was alleged in the petition that in order to carry out the plans for the reorganization of the business and affairs of the Louisville Title Company and of its subsidiary, the Title Guarantee Trust Company, it was the duty of the successor trustee to sell the securities in its hands in such manner as, in the reasonable exercise of business judgment, was likely to produce a reasonable price for such securities, and that the proper way to sell them was to offer them for sale after advertisement in separate items, or by groups of items, by public or private sale, and, after thus offering the property, to offer the entire pool of securities as a whole and to accept the bid that produced the most money. The plan proposed for advertising and selling the property in the hands of the trustee was set forth at length and the court was asked to approve the plan before the sale was made. A judgment was entered declaring the rights of the parties and approving the plan of sale recommended by the plaintiff in its petition and the sale was had in accordance with the judgment. The highest bid received was that of the Louisville Title & Mortgage Company of $524,750.

The trustee's report of sale was filed in court on November 22, 1934, and on December 31, 1934, the defendant Lona Rubarts filed the following exceptions:

"Comes the defendant, Lona Rubarts, and objects and excepts to the report of sale held upon the following grounds: (1) Because on the record the face amount of the mortgages sold herein was more than $2,000,000.00 and have a liquidating value of more than $1,300,000.00 and for that reason the bid received for the said securities is inadequate. (2) Because the sale is unreasonable and unfair to the nondepositing bondholders."

Other nondepositing bondholders filed exceptions, but they were later withdrawn. The exceptions of Lona Rubarts, filed for and in her behalf and of all other nondepositing bondholders similarly situated, were over-

ruled and it was adjudged that the bid of the Louisville Title & Mortgage Company of $524,750 was a fair, reasonable, and adequate price for the property sold, and the report of sale of the trustee was confirmed, and it was authorized and directed to carry out the terms of the sale to the Louisville Title & Mortgage Company in accordance with the order of sale and the terms of the judgment.

The only testimony heard was that of Thomas R. Lindsey, an experienced real estate man of Louisville, who had been employed to examine all of the property, both in Kentucky and Tennessee, which had been mortgaged to secure the notes, bonds, and other evidences of indebtedness held by the appellee United States Trust Company, trustee, to secure the payment of the outstanding collateral trust bonds of the Title Guarantee Trust Company. He was engaged in this work more than two years, and he testified that as a result of his investigation and study, the price for which the property sold was, in his opinion, fair and reasonable and that the property would probably sell for less if the sale should be set aside and another sale ordered.

Under the provisions of the trust agreement heretofore quoted, it was the duty of the trustee to convert into cash the assets in its hands and to apply the proceeds to the payment of outstanding collateral trust bonds. It is clear from the record that to liquidate these assets over a long period of time would entail large expenses and that in the end the net proceeds would probably not exceed the amount received at the sale. In view of the limitations and restrictions imposed upon the trustee by the trust agreement under which it is acting, in the event it is forced to sell from time to time the numerous pieces of real estate mortgaged to secure the notes and bonds held by it, we are convinced that liquidation of assets in its hands in the manner directed and approved by the circuit court is proper under the trust agreement and will prove more advantageous to the bondholders than liquidation by the trustee over a period of years. There is nothing in the record tending to show that the price received was inadequate or that the sale was in any respect unreasonable or unfair to nondepositing bondholders. On the contrary, the trustee and the reorganization committee made a thorough and exhaustive survey of the situation and devised a plan for the sale of the property held by

the trustee which is shown to be fair to all concerned. The purchaser, the Louisville Title & Mortgage Company, was organized under the reorganization agreement heretofore approved by this court and represents the depositing stockholders who own more than 80 per cent. in amount of the outstanding collateral trust bonds. The circuit court in its judgment ordered that all nondepositing bondholders should have the right to take advantage of the reorganization plan, and they may, during the period of sixty days after the judgment was rendered, deposit their bonds with the reorganization committee with the same rights and privileges as the owners of bonds theretofore deposited. Thus the nondepositing bondholders have the option to accept in liquidation their pro rata portion of the proceeds of the sale, or to deposit their bonds under the reorganization agreement, and go along with the majority bondholders under a plan of gradual liquidation.

We think the plan adopted for the sale of the securities held by the trustee was, under the circumstances, fair and reasonable; that it was fairly and reasonably carried out; and that, accordingly, the order of the circuit court confirming the sale is correct. The judgment is affirmed.