# National Surety Corporation v. Nantz.

(Decided Jan. 31, 1936.)

WILLIAM MARSHALL BULLITT, R. L. BLACKWELL, WHITE & CASE and R. H. CALLAHAN for appellant.

J. B. JOHNSON and L. O. SILER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On and prior to March 1, 1932, Mart West was the elected, qualified and acting sheriff of Whitley county, Ky., and O. W. Hood was one of his deputies. The deputy upon his assumption of office executed a bond to his principal, under the provisions of section 4141 of Carroll's Kentucky Statutes, with the National Surety Company, an indemnity corporation organized under the laws of the state of New York, as surety thereon, and which will be hereinafter referred to as the old company. Hood's bond was limited to the sum of $2,000, and its obligations ran exclusively to West, the sheriff. On the date mentioned, March 1, 1932, Hood, while attempting to arrest Jim Nantz for a misdemeanor, shot and killed him, and the latter's administrator, appointed after his death, later filed this action in the Whitley circuit court against the sheriff, his deputy, and the old company as the surety of the latter to recover damages for the alleged unlawful slaying of

plaintiff's decedent; but the surety of the sheriff was not proceeded against. The named defendants denied the unlawful slaying of Nantz and pleaded facts excusing it. The old company as the surety of Hood interposed the additional defense that the bond it executed, and because of which liability was sought to be imposed upon it, did not inure to the benefit of strangers thereto, one of whom was the decedent's administrator in this case.

Appropriate pleadings made the issues, and the status of the cause remained on the docket in that condition until after midnight of April 30, 1933. The bond upon which the action was brought against the surety of Hood expired on May 10, 1932, two months and nine days after the death of Nantz. Between the date of Nantz' death and May 1, 1933, the affairs of the old company went into the hands of the superintendent of insurance of the state of New York for the purposes of liquidation, rehabilitation, or reorganization pursuant to the statutory provisions of that state relating thereto, and which provisions conferred broad powers on that officer with reference to such matters. Conferences were had between him and the stockholders, and some creditors of the old company, and finally a plan of reorganization was agreed to pursuant to the terms of the statute, a part of which was the incorporation of a new company to be known as the National Surety Corporation, and which will hereinafter be referred to as the new company. The terms of reorganization also provided for the organization of other companies to take charge of certain classes of assets of the old company and to work out and execute plans, means, and methods whereby they might be liquidated to the best advantage of all persons interested therein. The new company was capitalized, according to the plan and agreement, at $1,000,000, with a surplus fund of $3,-000,000, making the actual value of the stock worth four for one. All of it was put into the hands of the superintendent of insurance as a fund to be applied on certain debts of the old company which had accrued prior to May 1, 1933, and the new company, under the reorganization plan, was exonerated from any liability for unsecured claims, one of which is that of the plaintiff herein, but there were just and equitable provisions made whereby they would eventually receive more than would be done under immediate liquidation. But we

deem it unnecessary to enumerate them in this opinion, except to say that they evidence fairness towards the holders of such claims, as well as due consideration for the protection of their rights. The new company agreed to and did become responsible for all future claims that might thereafter arise or accrue on bonds and suretyships then (after midnight April 30, 1933) in existence and unexpired, as well as renewals thereof, and to continue the business of the old company from thence forward. It (the new company) thereby became possessed of the valuable good will of the old company and thereby preserved the potential profits that might arise from the continued operation of the business of the old company, both of which would have been completely lost if the latter had gone into immediate liquidation at and from the time it went into the hands of the superintendent of insurance of the state of New York. Also, it was manifested and clearly proven that a vast amount of the assets of the old company, which, under the arrangement of reorganization, was appropriated to the extinguishment of its already accumulated debts, would realize but little, if anything, if immediate dissolution of the old company was made, and the reorganization agreement preserved such assets for the benefit of the creditors of the old company and others interested therein after the payment of debts in case of a surplus. The reorganization agreement and the plan as finally approved contained many details, specifications, and stipulations looking to the one end, of the greatest possible salvage of funds, but which is clearly unnecessary to be set forth seriatim in this opinion.

After the plan had been agreed upon and pursuant to a provision of the New York statute, the superintendent of insurance applied to the appropriate Supreme Court, corresponding to our circuit court, for an approval of the adopted method of reorganization of the old company and a continuing of its current and unexpired business, in the name of the new company. A creditor of the old company, belonging to the same class as is plaintiff herein, and whose debt, as we have seen, the new company did not absolutely agree to assume or pay, intervened and made all of the objections to the reorganization plan that could be presented under the facts, but the court, after a full hearing, approved the plan and adjudged that it was binding.

on all persons concerned, including the class of creditors to which the intervener and plaintiff herein belong, and which had the effect of requiring them to go into that litigation or to file their claims with the superintendent of insurance, and obtain their pro rata of funds available for such payments under the reorganization plan with the right to obtain future payments in the same way if, under the reorganization plan, any fund was accumulated for that purpose.

An appeal was taken from that judgment to an intermediate appellate court in the state of New York, and it affirmed the judgment; the style of the appeal being Application of the People by Van Shaick, Superintendent of Insurance, and the opinion is reported in 239 App. Div. 490, 268 N. Y. S. 88. An appeal from its affirmance was prosecuted to the highest appellate court of New York, styled ''Court of Appeals,'' and the judgment of both of the preceding courts was affirmed in the case of People, by Van Shaick, v. National Surety Company, 264 N. Y. 473, 191 N. E. 521. It will thus be seen that the plan of rehabilitation or reorganization of the old company as stipulated in the agreement for that purpose pursuant to the provisions of the New York statute, was approved by a final judgment of the highest court of that state, and which included the nonliability of the new company for the loss or claim attempted to be adjudicated in this case.

After the new company was organized and commenced to operate under the rehabilitation plan, plaintiff herein amended his petition and made it a defendant in the action. In the amendment he sought recovery against it as the successor of the old company upon the hypothesis or theory that it had purchased the business and the assets of the old company and thereby became liable for the latter's obligations under the principles announced by us in the case of American Railway Express Co. v. Commonwealth, 190 Ky. 636, 228 S. W. 433, 30 A. L. R. 543, and others of like tenor, both domestic and foreign. The new company, which is the appellant here, answered and relied on the defenses made by the original defendants, and, in addition thereto, pleaded all of the proceedings, judicial and otherwise, occurring in the state of New York and to which we have referred, and thereby relied upon the above-recited judgments of the courts of that

state as settling adversely the right of plaintiff herein to proceed against it by adjudging its nonliability therefor under the agreed to rehabilitation or reorganization plan which those judgments approved, and that under the provisions of article 4, section 1, of the Constitution of the United States, it was the duty of the Whitley circuit court to extend "full faith and credit" to the judgments of the New York courts. The trial court (Whitley circuit), however, overruled that defense, and instructed the jury as against appellant, the new company, as if it were an inter partes "assignee successor" to the old company under the doctrine of the American Railway Express Company Case, supra, and the jury returned a verdict against all of the defendants, including the new company for the sum of $1,700, upon which the court rendered judgment which it declined to set aside on defendant's motion for a new trial, and the new company has prosecuted this appeal therefrom. Brief of learned counsel filed in this court on its behalf urges all of the defenses interposed by each defendant in the trial court, as well as the one exclusively applicable to it, and which, as we have seen, was the exonerating proceedings had in the state of New York above referred to and the constitutional requirements that such judicial proceedings should be given "full faith and credit" by the courts of other states or commonwealths forming parts of the federal government.

If the New York courts that rendered the judgments relied on by appellant as exonerating it from liability for the claim here involved had jurisdiction of the subject-matter and of the person of plaintiff in any of the modes recognized and approved by the settled principles of the law for that purpose, then it would inevitably follow that the "full faith and credit" clause of the Federal Constitution required the Whitley circuit court to sustain appellant's reliance on the New York judgments as a defense herein, and the only question necessary for determination is whether or not those courts had such jurisdiction at the time the relied on judgments were rendered. That it had jurisdiction of the subject-matter is undenied. But that fact is also thoroughly established by the exhibits filed with appellant's answer or filed in the cause before trial, and which leaves for consideration only the question of, whether those courts had jurisdiction in any recognized

and approved manner of the person of plaintiff herein so as to make the judgments operative against him?

Appellant urges that jurisdiction of plaintiff's person was representatively obtained by the New York courts through the superintendent of insurance, who was a party to such proceedings in that state, since the court of appeals of the state of New York, in the case of People, by Van Shaick, Superintendent of Insurance, v. New York Title & Mortgage Guarantee Co. of Buffalo, 264 N. Y. 69, 190 N. E. 153, 156, 96 A. L. R. 297, declared that such officer, in the circumstances that he took charge of the affairs of the old company, "becomes a statutory receiver; the property of the corporation is brought into the protective care of the law," and from which it is argued that his appearance as a litigant and participant in such litigation brought into the case all of the creditors of the old company whose financial affairs he was therein administering primarily for their benefit. A number of cases are cited in support of that contention, including that of Converse v. Hamilton, 224 U. S. 243, 32 S. Ct. 415, 417, 56 L. Ed. 749, Ann. Cas. 1913D, 1292, and which appears completely to sustain that contention. In that case a similar officer in the state of Minnesota obtained an order of court in that state making a levy upon the stockholders of the impaired corporation in his charge, and he later sued some stockholders in the state of Wisconsin who defended that action upon the ground that they were not parties to the Minnesota judgment making such levy against them. That defense was upheld by the Wisconsin courts (Converse v. Hamilton, 136 Wis. 589, 118 N. W. 190; Converse v. McCauley, 136 Wis. 594, 118 N. W. 192), but, on appeal to the Supreme Court of the United States, that judgment was reversed, and in its opinion the court said: "Under this [Minnesota] statute, as interpreted by the supreme court of the state, as also by this court, the receiver is not an ordinary chancery receiver or arm of the court appointing him, but a quasi assignee and representative of the creditors; and when the order levying the assessment is made he becomes invested with the creditors' rights of action against the stockholders, and with full authority to enforce the same in any court of competent jurisdiction in the state or elsewhere. * * * So, when he invoked the aid of the Wisconson court, the case presented was, in substance, that

of a trustee, clothed with adequate title for the occasion. * * * In these circumstances we think the conclusion is unavoidable that the laws of Minnesota and the judicial proceedings in that state, upon which the receiver's title, authority, and right to relief were grounded, and by which the stockholders were bound, were not accorded that faith and credit to which they were entitled under the Constitution and laws of the United States.''

An analogous question was involved in the domestic case of Black et al. v. Elkhorn Coal Corporation, 233 Ky. 588, 26 S. W. (2d) 481. Numerous other cases to the same effect are cited in brief of counsel, but we do not deem it necessary to pursue this phase of the case further, since we are convinced that the intervention of the creditor representing the same class of claims of the old company in the New York courts, and the defense it interposed therein, was actually for the benefit of all the creditors of that class, including plaintiff herein, and operated to give the court jurisdiction of all creditors of that class. The principle of law is not only statutorily sanctioned in this commonwealth (section 25 of our Civil Code of Practice), but its approval has been judicially declared by courts generally where the facts are such as to call for its application. Many of our domestic cases applying it are found in the notes to the section supra of Carroll's Kentucky Codes, 1932 Edition, including the Black Case, supra, in 233 Kentucky.

But it is insisted that the intervening creditor in the New York proceedings did not expressly declare in his intervening pleading that he was doing so as a representative of all of his class of creditors, and that, because of such failure, his intervention did not operate to bring other creditors of that class into that litigation. But it is disclosed that the intervener in its intervening pleading expressly stated that the objections and defenses he interposed and relied on to defeat the rehabilitation plan affected not only his rights but those of ''all creditors'' of the old company, and that the consent thereto by the superintendent of insurance of the state of New York was a breach of duty ''to all the creditors and policy holders'' of the old company, and from which it will be seen that the intervening creditor presented to the court the facts and all of the rea-

sons why the rehabilitation plan should be rejected as adversely affecting "all the creditors" of the old company, and which was, as we conclude, in fact an intervention for and on behalf of all such creditors, particularly those belonging to the same class of the intervener.

Practically the exact question was before the Supreme Court of the United States in the case of Hartford Life Insurance Company v. Ibs, 237 U. S. 662, 35 S. Ct. 692, 59 L. Ed. 1165, L. R. A. 1916A, 765. See, also, the cases of Supreme Council of Royal Arcanum v. Green, 237 U. S. 531, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771, and Selig v. Hamilton, 234 U. S. 652, 34 S. Ct. 926, 58 L. Ed. 1518, Ann. Cas. 1917A, 104. In the Ibs Case the court held that a community of interest "in fact did exist" between the intervener and all others belonging to his class, and that, where the "others" were so numerous and scattered, a judgment rendered in such circumstances would establish the rights of all those belonging to the same class and having the same community interest, notwithstanding they were not personally served with process in the action. In other words, those opinions and others cited give effect to the common sense proposition that, what actually transpired, shall be given its legal effect whether or not the one who brought about the occurrence expressly asked for such effect. It is conceded by plaintiff's counsel that, if the intervener in the New York courts had stated in his pleading or by motion in that cause that its intervention was being made for itself "and all others belonging to the same class," then plaintiff herein would be bound by the New York judgments; but it is insisted that, since the words in quotation were not employed, plaintiff herein was not brought before the court, and is not bound by the judgment, although the intervening creditor stated in his pleading that the objections he interposed to the rehabilitation plan affected the rights "of all creditors" of the old company, including that of the individual intervener.

The objection so urged by counsel for plaintiff is not only extremely technical, but it is also vague and shadowy and, as we conceive, without substance. It is not contended that the questions involved and the rights of all parties concerned were not presented in the New York litigation, nor that they were not duly

considered and determined, and from all of which we conclude that the trial court erred in refusing to sustain appellant's defense relying upon the New York judgments as a bar to its liability herein, since, under the Federal Constitutional provision supra, its estoppel effect is the same as that of a domestic judgment similarly obtained. See Louisville & N. R. Co. v. Jones' Adm'r, 215 Ky. 774, 286 S. W. 1071, 53 A. L. R. 1255.

Our conclusion as to the effect of the New York judgments forecloses our right to interpret the New York statute or to review the proceedings taken thereunder with reference to the rehabilitation plan that the courts of that state approved. Whether or not they correctly decided the questions involved is a matter that is not and could not be presented in this case, since, as we have seen, the courts rendering them had jurisdiction of both the subject-matter and the person of plaintiff herein. If error was committed by those courts, the parties are nevertheless bound thereby, and we are precluded from exercising any reviewing jurisdiction. However, we would not be understood as questioning the soundness of their conclusions. On the contrary, in the recent cases of Jennings v. Fidelity & Columbia Trust Co., Receiver, etc., 240 Ky. 24, 41 S. W. (2d) 537, 542, Cralle v. Louisville Title Company, 244 Ky. 753, 52 S. W. (2d) 891, Dorman, State Banking Commissioner v. Jones, 257 Ky. 4, 77 S. W. (2d) 429, and Casteel v. Kentucky Home Life Insurance Co., 258 Ky. 304, 79 S. W. (2d) 941, we approved the principle that "A reorganization of a corporation in the hands of the receiver is authorized by law, favored by the courts, and comports with public policy." The real meaning of that expression is that, in liquidations of the affairs of extensive business interests, through and by legal proceedings the laws under which they are had and done will be liberally construed so as, if possible, to give effect to plans and methods of settlement that will ultimately result in the greatest benefit to creditors and other interested parties, even though usual remedies may be superseded or the enforcement of rights postponed, and especially so when such departures are clearly shown to be beneficial rather than detrimental to the beneficiaries of the assets being administered; they not being interpreted as contravening the "due process" clause of either the Federal (Amendment 14) or State Constitutions, but as affecting only

procedural remedies and not substantive rights. A highly recognized text authority supporting what we have just said is volume 15, Cyclopedia of the Law of Private Corporations, by Fletcher, secs. 7258 and 7259, and approval is given thereto by the Supreme Court of the United States in the case of Northern Pacific Railway Company v. Boyd, 228 U. S. 482, 33 S. Ct. 554, 57 L. Ed. 931, and Doty v. Love, 295 U. S. 64, S. Ct., 79 L. Ed. 1303.

Wherefore the judgment is reversed, with directions to sustain appellant's motion for a new trial and to set aside the judgment against it and for proceedings consistent with this opinion.

The whole court sitting.