Wells, Trustee, for use of Warga, Appellant,
*v.* National Surety Corporation.

Argued May 7, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Sylvia Schlesinger,* of *Schlesinger & Schlesinger,* for appellant.

*Donald Thompson,* with him *M. N. Thayer* and *Stephen Emery,* for appellee.

OPINION BY JAMES, J., September 29, 1937:

Mary Warga, assignee of Hugh Wells, trustee in bankruptcy of Brotherhood Watch and Jewelry Company, brought her action of assumpsit against the National Surety Corporation, and filed her statement of claim to which the defendant filed an affidavit of defense raising a question of law. The court below entered judgment for the defendant, from which plaintiff appeals.

From the plaintiff's statement the following facts appear. In 1929 the Brotherhood Watch and Jewelry Company was adjudicated bankrupt in the District Court of the United States for the Northern District of Ohio, Eastern Division, sitting at Cleveland. On February 19, 1929 Louis Greenberger was appointed ancillary receiver by the District Court of the United States for the Western District of Pennsylvania. Greenberger filed a bond with the National Surety Company as surety, which bond contained the following condition: "Now therefore, if the said Louis Greenberger as aforesaid shall obey such orders as said court may make in relation to said trust and shall faithfully and truly

account for all moneys, assets and effects of the estate of said bankrupt which shall come into his hands and possession and shall in all respects faithfully perform all his official duties as said ancillary receiver, then this obligation to be void, otherwise to remain in full force and virtue." Later, Hugh Wells was elected trustee in bankruptcy. The National Surety Company became involved and control of its affairs was taken over by the superintendent of insurance of the State of New York, as rehabilitator. On April 29, 1933 the bankrupt company, by the rehabilitator, entered into a contract with the newly organized National Surety Corporation, defendant herein, being part of the plan for the reorganization later approved by the highest court of the State of New York: *People v. National Surety Corp.*, 264 N. Y. 473, 191 N. E. 521. See also *National Surety Corp. v. Nantz*, 90 S. W. (2d) 385 (Ky.). Under the contract, the corporation assumed liability for and agreed to pay: "II...... (c). All losses occurring on and after the 1st day of May, 1933 and all losses as to which no notice was received by the Old Company [National Surety Company] prior to midnight of April 30, 1933, New York Standard Time, under any and all other bonds, policies and contracts of indemnity or insurance issued by the Old Company which may be in force and unexpired at midnight of April 30, 1933 New York Standard Time, as hereinbelow enumerated...... III. It is understood and agreed that the assumption of liability by the New Corporation under the provisions of paragraph 'II. (c)' ante, is subject to the following exclusions and exceptions...... (c). Liability for losses arising from, or caused by, acts committed prior to May 1, 1933 under fiduciary court bonds covering risks involving estates held or administered by persons or corporations acting in a fiduciary or trust capacity."

Louis Greenberger died on July 8, 1933, and sub-

sequently Lawrence Friedman was appointed his successor, as ancillary receiver. On April 30, 1934 the administrator of Greenberger filed an account which was referred by the District Court to Watson B. Adair, referee in bankruptcy, as special master for audit. On June 9, 1934, the master filed his report which was later confirmed by the court, in which the following items claimed as disbursements in the account were disallowed and the accountant surcharged therefor:

| Date | Item | Amount |
|------|------|--------|
| March 20, 1929 | Louis Greenberger, receiver's commission | $ 90.00 |
| April 22, 1929 | Louis Greenberger, receiver's commission | 50.00 |
| April 22, 1929 | Louis Greenberger, postage, service, typing | 100.00 |
| August 19, 1931 | Louis Greenberger | 125.00 |
| | Total | $365.00 |

On August 6, 1934 Hugh Wells, as trustee, sold the accounts receivable, including the account against the National Surety Company, to Edward Wargo, who later resold them to Mary Wargo, use plaintiff. For the items disallowed, suit was brought upon the assumption agreement.

It is the contention of appellee that the nominal and use plaintiffs are precluded from recovery by paragraph III, section (c) of the assumption agreement which excludes "liability for losses arising from, or caused by, acts committed prior to May 1, 1933, under fiduciary court bonds covering risks involving estates held or administered by persons or corporations acting in a fiduciary or trust capacity"; that no question of fact is involved, since the statement of claim on its face shows that the acts, from which the alleged loss arose, occurred prior to May 1, 1933. Appellant's position is that since the items of credit were disallowed because

they were not explained, the "act" giving rise to or causing the loss was the failure of the accountant to explain the items, and that the date of the "act" was the date either of filing the account, namely April 30, 1934, or the date of the audit in June, 1934, and, therefore, the loss was within the terms of the assumption agreement. This argument is hardly applicable to the two items described as "receiver's commission." These items the master described as excessive commissions paid to the receiver without notice to creditors and order of court, which consequently could not be explained. The third and fourth items only were condemned because unexplained. It seems to us, however, that inability to give a reason for the taking of moneys is not the "act" causing the loss; it is the *taking* that causes the loss. The money was lost from the moment it was appropriated by Greenberger in 1929 and 1931.

Whatever explanation there was of these items, the proper time to have divulged it was at the hearing before the master, or at least before the confirmation of the report by the court; and the only explanation that would establish liability of the appellee was that the disbursements were made not on the dates set forth in the account, but subsequent to April 30, 1933. Conceding that a proper explanation of the several items could have been made, no liability of the appellee would have ensued as no breach would have been committed either of the orginal bond or of the agreement of April 29, 1933. Whatever right of action appellant had was based upon the surcharges as set forth in the master's report and she must take them as she finds them, both in reference to the items of illegal disbursements and the several dates when they were made. Appellant is not consistent when she says that she is not attacking the disallowance of the several items, and yet is insisting that she be permitted to introduce evidence at the trial in explanation of the disallowance. The account-

ant had his day in court and a final order was made. Such an order cannot be subject to an attack in a collateral proceeding based upon it.

Appellant argues that the wrongful acts were not committed until the accountant or his administrator failed to explain or justify the allowance of the items at the time of the audit in June, 1934. This we cannot adopt as by the account filed, it appears that the items were disbursed on the several dates, all of them prior to May 1, 1933. The language of the exclusion clause of this contract and similar language in other contracts of the appellee corporation have been interpreted by the courts of the State of New York and it has been held that the date of the "act" is the date of the disbursement rather than the date of accounting or of surcharge: *Suffolk County Trust Co. v. National Surety Corp.,* 291 N. Y. Supp. 82; *In re Copsteins' Estate,* 279 N. Y. Supp. 411; *Coleman v. National Surety Corp.,* 278 N. Y. Supp. 826; *In re National City Bank of N. Y.,* 293 N. Y. Supp. 73. See also *National Surety Corp. v. Laughlin,* 172 So. 490, (Miss.) In *Coleman v. National Surety Corp.,* supra, one, Steinbach, was appointed committee of an incompetent person and filed a bond with the National Surety Company, as surety. Exceptions to his account, filed in January, 1933, were sustained and he was surcharged for making deposits in a New Jersey bank which had closed in 1931. The order confirming the surcharge was entered November 9, 1933. The National Surety Corporation had undertaken responsibility for "all losses arising from, or caused by, acts committed on and after the 1st day of May, 1933." It was there held that the act causing the loss was the depositing of funds in the New Jersey bank. In the course of its opinion, the court said: "We must distinguish here between 'losses' and the 'acts' by which they are occasioned. The defendant did not agree to pay except for losses sustained by the estate on or after

May 1, 1933. It did not agree to pay even for such losses if they were caused by acts committed previous to May 1, 1933. The plaintiff's contention that in the present case both the 'act' and the 'loss' consisted in Steinbach's failure to pay in accordance with the order of November 9th disregards the language and intent of the assumption certificate, which plainly discriminates between the two. Nor is the distinction between a charge and a surcharge decisive here, for where illegal transactions resulting in a loss have occurred both will necessarily result in a direction to pay the balance ascertained to be due upon the accounting. In the present case there would have been no loss after May 1, 1933, except for the illegal act committed long before. Whether produced by a charge or by a surcharge, that loss is attributable to the deposit of the funds in the Seacoast Trust Company, resulting in the depletion of the estate and the inability of the committee to turn over the balance constructively in his possession." *In re Copsteins' Estate,* supra, the court said: "The findings heretofore made by the court established that the acts of these fiduciaries, which constituted a waste of the respective properties in their hands and which were made the basis to the surcharge against them, occurred prior to the date of such assumption certificate. The fact that the decrees holding the fiduciaries liable were signed after the date of the assumption does not suffice to warrant holding National Surety Corporation liable."

The appellant attempts to distinguish *Coleman v. National Surety Corp.* and *Copsteins' Estate* in that there was a finding of fact as to when the act causing the loss was committed, whereas, in the case at bar there has been no finding of fact. In her statement of claim, appellant fixes the time when the disbursements were made as the dates fixed in the account, which were disallowed, and for the purpose of determining her

380

rights these dates are as binding as a finding of fact by a court or jury. She has made them the very foundation of her suit.

Appellant relies upon *In re Sacks' Estate*, 274 N. Y. Supp. 707, involving a similar assumption agreement by the appellee corporation, as controlling here. In that case the guardian in filing his accounts for several years showed a charge for a large amount of Liberty Bonds. His account, filed July 17, 1933, showed an item for Liberty Bonds, which his executor was unable to find. The proof established that these bonds had been used by him in his partnership business, and at the time of the guardian's death, his estate was not insolvent. The court found that although the proof showed a misuse of the funds, it did not amount to a dissipation or loss. The writer of that opinion later wrote the opinion in the Copsteins case. In the present case, we have no other facts than that illegal disbursements were made prior to the effective date of the assumption agreement.

Judgment affirmed.